## FLANDERS and others vs. SHERMAN and another.

Under our statute (sec. 43, ch. 132, R. S.), the relation of an attorney to the cause of his client does not cease on the recovery of judgment, unless terminated by some act of the client. The amount of the judgment may be paid the attorney of record, and an acknowledgment of the satisfaction thereof, executed by him at any time within two years from the filing of the record, has the same effect as if made by the judgment creditor, and is conclusive against him, except as to persons having actual notice of the revocation of the authority of such attorney.

While it may be the duty of an attorney, when served with notice of a motion by the opposite party, that a judgment in favor of his client be discharged of record, to confer with his client in regard to such motion, and thus give him an opportunity to meet it, yet where he has neglected to do so, courts cannot treat the case as though notice of the motion had not been properly served.

An order of court discharging a judgment will not be set aside on the application of the judgment plaintiff, unless his application is made within one year after he has actual notice of the order, although it may appear that the judgment had never in fact been satisfied, and that the plaintiff had been prevented from resisting effectually the motion for its discharge through the neglect of his attorney, on whom notice of the motion was served, to inform him of it.

But where the application is made within the time limited, the plaintiff may, in such a case, be relieved from the order on the ground of "excusable neglect" in failing to resist the motion therefor while the same was pending. Sec. 38, ch. 125, R. S.

APPEAL from the Circuit Court for *Crawford* County.

The plaintiffs, constituting the firm of *Flanders & Co.*, of Chicago, commenced this action on the 31st of May, 1858, in said court, by writ of attachment against the defendants *Michael Sherman* and *Joseph S. Wilson*, who constituted the firm of *Sherman & Wilson*, doing business at Prairie du Chien in this state. The action was for an indebtedness upon notes executed by the defendants. The summons and complaint were signed "C. F. Remick, Hunt, Blair & Bro., Plaintiffs' Att'ys." Certain notes belonging to the defendants were seized by the sheriff under the attachment. On the 28th of September, 1859, the parties entered into a written stipulation over their own signatures, as follows; that judgment should be entered against the defendants at the then pending term of said court, for the amount claimed by the plaintiffs; that defendants should deliver to plaintiffs three notes dated May 1, 1858, made by one Henry S. Sherman of Kankakee City, Illinois, to the defendants, for $500 each, due respectively eight, fourteen and twenty months from their date, and secured by a deed of trust of the same date executed by said Henry S. Sherman to H. S. Potter, trustee, of Chicago; said notes being indorsed by the defendants and bearing interest at 10 per cent., and being among the notes seized under the attachment. If it should appear within twenty days from the date of the stipulation, that said notes and deed were genuine, and such as represented by the defendants, the plaintiffs were to receive them in payment of the judgment, any excess in their amount over that of the judgment to be repaid by the plaintiffs, or any deficiency in their amount to be made good by defendants. But it was expressly agreed that the settlement should not be thus made unless said Henry S. Sherman acknowledged his indebtedness as expressed in said notes, nor unless said deed of trust was "good and valid on record, and nothing on record interfered with it in any manner, and it was recognized by said Sherman." Upon this stipulation is an indorsement without

date, signed by " Hutchinson & Merrill, Defendants' Att'ys," and by " Remick & Hunt, Johnson & Bullock, Plaintiffs' Att'ys;" by which they " consent that an order be entered in the cause for the late sheriff to deliver to the present sheriff property seized under the attachment herein ; and that said present sheriff may proceed to collect the same at any time after the 20th of October, 1859." It appears that an order of the court was made accordingly, and the sheriff then in office took possession of the attached property. On the 1st of October, 1859, on reading and filing the above stipulation, the court ordered judgment to be entered for the plaintiff in accordance with its terms, for $1778.93. At the June term, 1861, the sheriff reported that after diligent efforts to collect certain of the securities seized under the attachment, (of which a list is given,) he found them entirely worthless, and brought them into court asking to be further discharged from the duty of collecting them. He further reported that, by the request and upon the responsibility of the plaintiffs, he had placed the three notes of Henry S. Sherman above described with Daniel C. Nichols, Esq., of Chicago, for collection, and had not yet heard therefrom. He also returned with said report a letter from the plaintiffs and one from said Nichols. The letter of the plaintiffs is dated December 15th, 1859, and addressed to D. H. Johnson, Esq. After requesting him to hand to the clerk of said circuit court a check enclosed, and have him docket their judgment in this cause, they add : " We have written Remick & Hunt to have the sheriff send the three $500 notes of H. S. Sherman to D. Nichols, an attorney of this city, for collection, as Mr. Sherman resides at Kankakee City, near this city, and it will be necessary for him to send them to some attorney here ; and as we are the parties mostly interested, we would like to have them sent to a good attorney. Mr. Nichols is entirely responsible, and we will become responsible to the sheriff for the acts of Mr. Nichols. If it is not too much trouble, will you see the sheriff and have him send the notes at once as

requested.   If he objects to sending to him, and will not do so, have him send to some responsible attorney here ; but if he will send to Mr. Nichols, he will free himself from all liability, as we will take all risks on account of their being so sent." The letter of Mr. Nichols was also addressed to Mr. Johnson, was dated January 6th, 1860, and was as follows: " Your favor of the 1st was received in due time, containing the three notes made by H. S. Sherman   *   *   *.   I have been to Kanka- kee City, and presented the notes to H. S. Sherman for pay- ment, but he declined to pay at present.   It will probably be necessary to advertise and sell the premises covered by the trust deed given to secure the payment of the notes, and if the premises do not sell for an amount sufficient to pay the notes, it will be necessary to bring suit on them to recover the bal- ance.   It will be necessary to have a certified copy of the or- der of court authorizing and directing the sheriff to collect said notes, in order to satisfy the trustee that the sheriff is the proper person to direct a sale under the trust deed.   If the sheriff has the trust deed, he had better send that to me.   Enclosed here- with find an order directing the trustee to sell, and return it to me, and I will proceed immediately with the collection." Attached to said report of the sheriff was also a statement of the amount due upon the notes, January 1, 1860, showing due on the judgment $1809.06 : on the notes $1747.08.   The report also showed a balance in the sheriff's hands, from sun- dry collections, of $25.36, which was applicable to said judg- ment.   At the same time the defendants moved that the judg- ment be discharged of record, basing their motion upon the stipulation and the sheriff's report above mentioned, and upon an affidavit of *J. S. Wilson*, one of the defendants.   This affi- davit stated that by the terms of said stipulation defendants then were, and for a long time had been, entitled to have said judgment discharged, as they had complied in all things with said stipulation on their part, and the plaintiffs did receive said notes and deed of trust, and the same were genuine and valid,

and there was, at the time of making such stipulation, no other encumbrance upon the real estate embraced in said trust deed; and that if any deficiency in the amount of such judgment should appear to exist upon the report of the sheriff, the defendants were and ever had been ready to make good such deficiency. The printed case states that due notice of this motion was served on D. H. Johnson, Esq., attorney for the plaintiffs; and it appears from the record that Mr. Johnson appeared for the plaintiffs at the hearing, and resisted the motion. The court granted the motion June 15, 1861, and discharged the judgment in full, the order for that purpose reciting that the defendants, at the hearing, "tendered in open court the balance due on said judgment, as by report of sheriff and papers on file."

In October, 1862, a notice was served upon defendants, (with copies of certain affidavits of *G. W. Flanders,* C. F. Remick and Daniel C. Nichols,) that a motion would be made before said court, on the 20th of that month, to set aside the order discharging said judgment; but this motion never came to a hearing. In August, 1863, an order was made for the defendants to show cause, on the 29th of that month, why the above mentioned order should not be vacated, and the judgment restored. At the hearing, the following affidavits were read on the part of the plaintiffs: 1. The affidavit of *G. W. Flanders,* taken on the 6th of October, 1862, states that the action was brought at the instance of the affiant, who, at the commencement thereof, was at Prairie du Chien; that the attorneys employed and retained by him were C. F. Remick, of McGregor, Iowa, and B. T. Hunt, then of Prairie du Chien; that all the papers for the commencement of the suit were prepared by the said Remick and Hunt, and signed "Remick and Hunt, Plaintiffs' Attorneys;" that said cause was continued through several successive terms of court to the September term, 1859; that during that time said Remick & Hunt were the only counsel for plaintiffs in the action, and the only attorneys appearing

of record in the same; that during said term, to wit, on the 28th of September, 1859, affiant being then at Prairie du Chien, the stipulation above described was entered into by the parties; that immediately thereafter, affiant proceeded to Kankakee City, and investigated the condition of the notes and security against Henry S. Sherman; and within a week ascertained that the title to the land conveyed by Henry S. Sherman to H. S. Potter, trustee, was imperfect in many respects, and that the defendants had, prior to the date of said stipulation, and after the commencement of this action, to wit, on the 12th of May, 1859, executed to said Henry S. Sherman a full and valid release and quit-claim deed of all their right and interest in and to the lands so conveyed to Potter as trustee, and especially any interest which they might have acquired by such trust deed; that this deed of release was recorded May 23d, 1859; that affiant was advised by counsel that he could not take said notes of Henry S. Sherman out of the custody of the law and receive them under said stipulation, without making said deed of release operative and effectual; that affiant immediately had an interview with said Henry S. Sherman, and endeavored to persuade him to execute new security for said notes on the lands embraced in said trust deed, but he wholly refused to do so; that affiant immediately advised his counsel at Prairie du Chien, and also the defendants, by letter, that the terms of said stipulation, as to the three notes of Henry S. Sherman, had not been complied with by the defendants, and that he should not receive the same, but was willing to receive them provided the title to the security could be rendered perfect; and affiant expressly denies that he has ever received said notes under the stipulation, or that any of the plaintiffs have ever agreed to do so, but insists that from the time of discovering the said release, affiant decided to continue the attachment lien on said notes, and whatever was done with them afterwards by the plaintiffs, was done under their rights as attaching creditors; that the three notes had been

sent by the sheriff for collection to D. C. Nichols, Esq., of Chicago, who was recommended to the sheriff for that purpose by the affiant; that Mr. Nichols collected a portion thereof, and, as attorney for said sheriff, had paid the plaintiffs as proceeds of the property so attached, $576.63, to apply on said judgment; that about the 1st of July, 1862, affiant was informed for the first time (except from a rumor which he investigated as soon as possible), of the order of court made at the June term, 1861, for the discharge of said judgment of record; that the only notice of the motion for such discharge was directed to D. H. Johnson as plaintiffs' attorney, and by him accepted; that none of the attorneys appearing of record were notified or informed of such motion, although Mr. C. F. Remick was at that time, and ever since had been, in McGregor, Iowa; that said Johnson was not at that time, nor has he since been, the attorney for plaintiffs, nor in any way connected with said cause by their authority; that the only connection he had ever had with the case was, that he was consulted by affiant in certain points subsequently to the commencement of the suit; that he forwarded his bill of fees at an early day after the judgment was obtained, and the same was paid to and receipted by him in full, January 2d, 1860, and that he has never had any connection with the suit by authority of the plaintiffs since that time; that plaintiffs were never informed of such motion by Johnson or any one else, and they had no knowledge or information of such motion or order until July 1st, 1862, except a vague rumor shortly before. 2. The affidavit of D. C. Nichols, Esq., of Chicago, is not important here under the decision of this court. 3. The affidavit of C. F. Remick, Esq., (made October 9th, 1862,) states, that he was retained as counsel for the plaintiffs in this cause, and, together with B. T. Hunt, Esq., then of Prairie du Chien, prepared all the papers and commenced the suit at the request of *Flanders;* that said Hunt and affiant continued to have the charge and control of the suit; that affiant took part in the arrangement (by being consulted with as to

the substance of the same), by which a judgment was obtain-
ed at the September term, 1859 ; that he has never been dis-
charged or directed by the plaintiffs to discontinue his connec-
tion with said cause, and always considered himself the acting
attorney therein together with said Hunt; that he never had
any notice or information whatever of the order for the satis-
faction of said judgment, or any motion for that purpose, al·
though he has, since the commencement of the suit, resided at
McGregor, Iowa ; and that he did not know that such an order
had been entered until a few weeks before the making of said
affidavit, when he was informed of the fact by an attorney of
the plaintiffs from Chicago.    4. The affidavit of B. T. Hunt,
Esq., (made August 20th, 1863,) states that he was retained,
together with Mr. Remick, as counsel for the plaintiffs in this
action ; that he and Remick prepared all the papers and com-
menced the suit at *Flanders'* request ; that affiant continued in
charge of the case together with Remick, and was frequently
consulted by *Flanders* until the September term, 1859, of said
circuit court, when the judgment was obtained against the de-
fendants ; that affiant does not think he was ever discharged
by the plaintiffs, neither has he ever done anything more in
the case ; that he always supposed Remick and himself to be
the attorneys of record, and the responsible attorneys in the
case ; that Mr. Johnson assisted some in obtaining the judg-
ment, but was never, affiant believes, an attorney of record in
the action ; that affiant never received any notice of any motion
to satisfy said judgment, and had no knowledge that such a
motion had been made until informed by *Mr. Flanders* in Au-
gust, 1863 ; and that Mr. Johnson has had no connection with
affiant in the practice of the law since 1859.    5. The affidavit
of O. Jackson, Esq., of Chicago, (made August 10th, 1863,)
states that about the 21st of September, 1862, he was employ-
ed by *Mr. Flanders* to go to Prairie du Chien and attend to the
objects of this motion, which had been in charge of O. B.
Thomas, Esq., [of Prairie du Chien,] who was then about to

leave for the war; that affidavits and copies thereof, together with notice of motion, were prepared by affiant and his partner and W. R. McAllister, Esq., and forwarded by affiant to C. F. Remick, Esq., of McGregor, Iowa, about October 7th, 1862, notifying the defendants that a motion to vacate the order discharging the judgment would be made on the 20th of that month, with instructions to Remick to serve the copies thereof and file the originals of said affidavits in said circuit court; that Mr. McAllister left Chicago to attend the October term of said circuit court, October 18th, 1862, for the purpose of arguing said motion, but owing to the fact that no court was held at that time, nothing was done with said motion; that in time for the next term of said court, to wit, in May, 1863, preparation was made by said McAllister to argue and dispose of said motion, when, a few days before the commencement of the term, and too late to prepare new affidavits, he received a letter from the clerk of said court saying that the papers relating to said motion were not on file; and that for this reason neither affiant nor Mr. McAllister attended said court at said May term. 6. The affidavit of Mr. McAllister (made August 11, 1863), was similar in substance to that of Mr. Jackson. 7. A supplemental affidavit of *G. W. Flanders* (made August 8, 1863), states that as early as October 11th, 1859, affiant gave notice to Remick & Hunt, plaintiffs' attorneys, that the quitclaim deed given by defendants to H. S. Sherman released the security in the trust deed executed by said Henry S. Sherman, and therefore requested said attorneys to notify the defendants within the twenty days; that, as affiant believes, defendants did have notice within the twenty days that the plaintiffs would not take the notes and trust deed in payment as proposed in the stipulation; that affiant finds on examination that he had heard in some way that the defendants had obtained an order satisfying the judgment, and then immediately wrote to D. H. Johnson (said Hunt and Remick not being at Prairie du Chien), requesting him to send affiant a statement of the judgment,

and stating that he had heard that defendants had got the judgment satisfied, and desired him, if such was the fact, to take steps to get the judgment opened up ; that to this letter, which was dated October 2d, 1861, Johnson never replied ; that after waiting a short time, affiant received a memorandum of said judgment, which did not show any satisfaction, and he concluded there had been no order of the kind entered, and gave it no further thought until about July 1, 1862 ; that about the 14th of that month, affiant received a letter from O. B. Thomas, Esq., [of Prairie du Chien,] informing him of the facts as they appeared of record, and thereupon wrote to Mr. Thomas requesting him to take steps to set aside the order discharging the judgment; that some time in the following September, Mr. Thomas informed affiant that he was about to leave for the war, and immediately thereafter affiant employed O. Jackson, Esq., of Chicago, and sent him to Prairie du Chien to attend to the matter, and also employed W. K. McAllister, Esq., of Chicago, to assist Mr. Jackson in the suit; that Mr. Jackson went to Prairie du Chien in September, and prepared papers on which to move to set aside the order, and believes that some papers were served upon one or both of the defendants, with notice of a motion to be heard October 20th, 1862, which motion, for some reason, was not heard at that time ; and that afterwards affiant left the matter in the hands of Messrs. Jackson & McAllister. The affidavit further states that Mr. Johnson had no authority whatever to appear or act for the plaintiffs upon the motion to discharge the judgment; that no notice of said motion was served upon the plaintiffs or either of them ; that no balance was ever paid or offered to be paid to the plaintiffs ; that the $576.63 aforesaid is all that has been realized by the plaintiffs or received by any one having authority to receive money for them on said judgment. Attached to this affidavit was the letter from *Mr. Flanders* to Mr. Johnson therein referred to. It is dated October 2, 1861, and is in the following words : " Will you oblige me by sending me memorandum of

names of the parties to the suit of *Geo. W. Flanders & Co. v. Sherman & Wilson* in your court; also the term and day on which judgment was rendered, and exact amount of damages and costs. I would like an answer immediately, on account of another suit with them. I heard casually that they had got said judgment satisfied with the collaterals that we attached. If so, I want to employ you to get the judgment opened up," &c. The letter from *Mr. Flanders* to O. B. Thomas, Esq., dated July 14, 1862, and referred to in the affidavit, was also attached thereto, but is not important here. 8. A supplemental affidavit of D. C. Nichols, Esq., made August 11th, 1863, does not have any bearing upon the points decided by this court.

On the hearing of the motion, the defendants relied upon the record and files in the action, and also upon the affidavits of *Michael M. Sherman, J. S. Wilson,* D. A. Johnson, Esq., and Willis Drummond. *Mr. Sherman's* affidavit states, among other things, that at the time the parties entered into the stipulation above mentioned, he was informed and believed that the deed of release spoken of in the affidavit of *Mr. Flanders,* had not been recorded; that the defendants were not advised by the plaintiffs' attorneys, by letter or otherwise, that the conditions of the stipulation had not been complied with, and that the plaintiffs would not receive the notes and deed of trust; that defendants did not hear anything from the plaintiffs or their attorney until two or three months after the stipulation had been entered into, and then only through a casual remark of C. F. Remick, Esq., on the street, that plaintiffs did not intend to accept said notes and trust deed; that defendants, in compliance with said stipulation and the order of the court, paid the balance to D. H. Johnson, Esq., plaintiffs' attorney; that the co-partnership between B. T. Hunt, Esq., and D. H. Johnson, Esq., was dissolved in the early part of the year 1859, and immediately thereafter Mr. Hunt left Prairie du Chien, and removed to McGregor, Iowa; that Mr. Johnson remained in Prairie du Chien in the practice of the law

until after the June term of the circuit court for Crawford county for 1861, and throughout all that time acted as the attorney for the plaintiffs in this cause with their knowledge and consent; that he appeared in the cause at the term when said stipulation was entered into and judgment rendered against defendants in favor of plaintiffs; that, as affiant is informed and believes, the original draft of said judgment was made out by Mr. Johnson, and now appears on file in the cause in his hand-writing; that he computed the interest when the judgment was taken, and performed other acts in behalf of said plaintiffs by their authority and with their knowledge and consent, and of which they received the benefit; that said *Geo. W. Flanders*, in behalf of the plaintiffs, continued to correspond with him in relation to said cause, and require of him the performance of acts and duties connected therewith, long after said judgment was obtained and order of satisfaction made and entered, thus recognizing him as their attorney in said cause.    The affidavit of *Mr. Wilson* merely states that he has read the foregoing affidavit of *Mr. Sherman;* that he is acquainted with the facts therein stated; and that the statements of said affidavit are true.    The affidavit of Mr. Drummond states that he has examined the papers on file in this action, that he is acquainted with the hand writing of Mr. Johnson, and that the original draft of the judgment in the cause is in his hand-writing.    The affidavit of Mr. Johnson states that he was retained in this action by one of the plaintiffs during the September term, 1859, of said court, and was requested to take special charge and exclusive management of the case for the plaintiffs from that time forward; that Messrs. Remick & Hunt had acted for the plaintiffs before that time; that the gentleman who retained affiant, and who represented himself to be a member of the firm of the plaintiffs, and whom affiant believes to have been *Mr. Geo. W. Flanders*, informed affiant that he was not dissatisfied with Messrs. Remick & Hunt and did not wish to discharge them from the case, but desired affiant

to take exclusive management of the case because he resided at Prairie du Chien, where the records of the court were kept, and for other reasons, which he said it was not necessary to explain; that affiant believes that no formal substitution of attorneys was ever served or filed in the case, but says that he acted as the attorney for the plaintiffs from that time, and entered up the judgment herein; that afterwards the plaintiffs had a controversy with affiant in relation to his fees, wherein he distinctly remembered having informed them that his account was in full not only for what services he had rendered in the case, but also for what he might be required to do thereafter; that plaintiffs thereafter freely corresponded with him about the securities in the sheriff's hands by virtue of the original attachment in the cause, but affiant cannot upon his oath state that they corresponded with him about any other matter concerning the case after the judgment was rendered and his fees paid; that he received a letter from them wherein they expressed a desire that the notes &c. in the sheriff's hands, should be sent to Mr. Nichols, at their risk and responsibility, which letter affiant handed to the sheriff; that Nichols also corresponded with affiant on the same subject; that when the motion to satisfy the judgment was made, affiant supposed he was at least one of the attorneys for the plaintiff in the action, and argued the motion for them; that affiant having refused to receive the amount remaining due upon said judgment, according to the claim of the attorney for the defendants, in bank bills, the defendants' attorney undertook to pay it in exchange on Chicago, and afterwards, about July 1, 1861, affiant received a letter from Messrs. Noble & Drummond, in behalf of defendants, enclosing a draft for $68.25, which letter was dated at McGregor, June 28th, 1861, and the original whereof is attached to and made a part of the affidavit; that affiant immediately mailed said draft to D. Nichols, Esq., at Chicago, in a letter, a letter-press copy of which is attached to and made part of the affidavit; that affiant never received any answer to said letter

nor any communication thereafter, either from the plaintiffs or from Mr. Nichols, in relation to this case ; that he never received any such letter as the one a copy of which is attached to the supplemental affidavit of *Mr. Flanders* above given, though he was at that time residing at Madison in this state, as the assistant attorney general of the state, and had arranged to have his letters forwarded to him from La Crosse and Prairie du Chien, and numerous letters were forwarded to him pursuant to said arrangement.—The letter of Mr. Johnson to Mr. Nichols attached to this affidavit, was dated at La Crosse, July 1, 1861, and was as follows : " Enclosed you will find *Messrs. Sherman & Wilson's* draft on your city for $68.25, the balance due from them after applying what the sheriff has collected on the notes left in his hands, and the face of the three notes sent to you for collection, in the case of *Geo. W. Flanders & Co.* against them. The court made an order in the last [June] term, that the judgment should be satisfied upon the payment of that balance. I resisted the order upon the ground that the validity and availability of the securities in your hands did not appear. But the court held that *Geo. W. Flanders & Co.*, having ordered these securities to be sent to you for collection at their risk, and you having failed to advise the sheriff of any defect in or trouble about collecting these securities, the plaintiffs had accepted them in satisfaction of their judgment *pro tanto*, and ordered the judgment to be satisfied; and that in any event it rested with them, under the stipulation upon which the judgment was entered, to show that these securities were not valid and satisfactory. I write to you instead of *Messrs. Flanders & Co.*, because you have this matter in charge for them at Chicago, and probably understand the above explanation better than one who is not a lawyer, and because I wish your advice at once as to what should be done."*

*Note.—There is found here with the papers in this cause, an affidavit of D. C. Nichols, Esq., made July 20th, 1864, denying that he ever received the above letter of Mr. Johnson or the draft therein referred to; but the making of this affidavit was subsequent to the date of the order appealed from.—Rep.

After the reading of these affidavits and papers, and after hearing counsel, the court granted the motion and set aside its former order discharging the judgment in the action. From this order the defendants appealed.

*B. E. Hutchinson*, for appellants, contended that the plaintiffs' motion should have been made within one year after they had actual notice of the entry of the order satisfying the judgment, and that no excuse was available beyond the year. R. S., ch. 125, sec. 38; *Park v. Church*, 5 How. Pr. R., 381; *Whitney v. Kenyon*, 7 id., 458; *Van Benthuysen v. Lyle*, 8 id., 312; *Spafford v. City of Janesville*, 15 Wis., 474; *Van Steenwyck v. Miller*, ante, p. 320. Written notice of the entry of the order was not necessary. *Whitehead v. Peccare*, 9 How. Pr. R., 35. 2. The plaintiffs knew of the satisfaction of the judgment before October 1st, 1861, as is shown by *Flanders'* letter to Johnson of that date. The affidavit upon which their first motion was based was served October 9th, 1862. In that affidavit it is acknowledged that they "were informed of the satisfaction of the judgment about the 1st of July, 1862." Yet no effective step was taken to vacate it until August 28th, 1863, the date of the order to show cause against the order now appealed from. 3. Johnson distinctly affirms his authority as attorney for the plaintiff. He entered up the judgment. *Flanders* confesses that he consulted with him relative to the suit and paid his fees. The money due upon satisfying the judgment was paid to him, and by him transmitted to the resident attorney in Chicago. His name is indorsed upon the stipulation for judgment as one of the plaintiffs' attorneys. Every act after the commencement of the suit was his. *Flanders* addressed him in the ordinary manner of a client to his attorney. The plaintiffs have affirmed his acts by adopting and attempting to collect the judgment. This court has often decided that it will not inquire into the authority of an attorney, duly admitted, appearing in a case. Much more need not the opposite party. Whatever the actual relation between them,

the defendants were authorized to treat him as an attorney of the plaintiffs. A cause is in court until the satisfaction of the judgment, and all notices of it must be served upon the attorney. R. S., ch. 140, sec. 43. Notice to him is notice to the party. The notice was duly served upon Johnson, and he appeared and resisted the motion. The plaintiffs were non-residents of the state; there was no one else within reach of notice; the attorney was authorized for two years to satisfy the judgment. From the necessity of the case, notice to him was good. *Lee v. Brown*, 6 Johns., 132; 2 Johns. Cases, 121.

*E. S. Smith*, for respondents, contended that the court had no power, on motion, to order a satisfaction of the judgment, because there had been no payment *in money* to the plaintiffs or their attorney. *Codwise v. Field*, 9 Johns., 263; *Briggs v. Thompson*, 20 id., 294; R. S., ch. 132, sec. 44. 2. The order of June 15th, 1861, was irregular. In all cases after judgment the authority of the attorney of record ceases, except to receive payment and do whatever act may be necessary to obtain the money upon the judgment. *Jackson v. Bartlett*, 8 Johns., 362; 2 Inst., 378; 2 Bos. & Pull., 357; *Nolan v. Jackson*, 16 Ill., 272; *Lewis v. Gamage*, 1 Pick., 347; *Kellogg v. Gilbert*, 10 Johns., 220; *Gorham v. Gale*, 7 Cow., 739; *Livingston v. Burrell*, 21 Wend., 362. 3. The order was fraudulently obtained by the false oath of one of the defendants. Courts have set aside judgments after years, on motion, where it appeared that they had been obtained by fraud. A judgment obtained upon false or fraudulent suggestions is void, and may be impeached at law by the party against whom it is sought to be enforced. *Borden v. Fitch*, 15 Johns., 121. It has also been held that where the plaintiff was a party to the procurement of an irregular judgment, a limitation as to the time within which application must be made to set aside the judgment did not apply. *Manuf. Bank v. Boyd*, 3 Denio, 257.

*By the Court*, COLE, J. We are satisfied from the record and

evidence in this case, that Johnson was authorized to receive notice of the motion to satisfy the judgment, and to appear in behalf of the plaintiffs and resist that motion. He acted as one of the attorneys of the plaintiffs in the cause, and the decided weight of evidence is in support of the position that he did so in pursuance of his employment and retainer as one of their attorneys. It is true that *Flanders* swears, in his affidavit, that Johnson was not, at the time of the service of the motion papers upon him, one of the attorneys for the plaintiffs, or in any way connected with the cause by their authority; and yet he says that he was consulted by him in certain points subsequent to the commencement of the suit, and that he was paid his bill of fees at an early day after judgment was obtained. Johnson swears that he was employed by *Flanders* at the September term of the circuit court, 1859, as an attorney, and was requested to take special charge and exclusive management of the cause for the plaintiffs from that time forward. His name is signed as one of the attorneys of the plaintiffs to the memorandum or indorsement on the stipulation upon which judgment was entered. That stipulation appears to have been signed by the parties themselves, while the attorneys sign the memorandum consenting that an order be entered in the cause for the late sheriff to deliver to the then acting sheriff the property seized under the attachment, and that the latter proceed to collect the same after the day therein named. Now, when we consider the nature and object of the stipulation, and the nature and object of the memorandum thereon indorsed, it is difficult to believe that the plaintiffs were not fully cognizant of the terms of the memorandum, or were ignorant of the names of the attorneys who had signed it on their behalf. If Johnson had not been retained as one of the attorneys of the plaintiffs, and had no authority to appear and act for them in the cause, how did it happen that his name was signed as one of their attorneys on a paper so important as this stipulation? Besides, it appears that Johnson drew up

the order for judgment.  Without alluding to other facts and circumstances tending strongly to support the conclusion, we have no doubt, from the above evidence alone, that Johnson was one of the plaintiff's attorneys in the cause, and that the defendants were authorized to treat him as such.   Under our statute, the relation of an attorney to the cause does not cease on the recovery of judgment, unless terminated by his client.   The amount of the judgment can be paid the attorney of record, who is expressly authorized to execute an acknowledgment of the satisfaction of such judgment, at any time within two years from the filing of the record, in the same manner and with like effect as if made by the party himself; and such satisfaction is made conclusive against the party in whose favor the judgment was rendered, except as to persons having actual notice of a revocation of the authority of the attorney.   Section 43, chap. 132, R. S.   And where a party has an attorney in the action, the service of papers is required to be made upon the attorney instead of the party himself.   Section 43, chap. 140.   And considering that the plaintiffs in this case were non-residents, we cannot doubt that the service of the motion papers to satisfy and discharge the judgment was properly made upon the attorney Johnson.   He was served with notice of the motion, and appeared and resisted it.   And while we are frank to say that we think it was his clear duty to confer with the plaintiffs in regard to that motion, and thus give them an opportunity to meet it, yet we cannot treat the case as though no proper notice of the motion had been served.

It is insisted that the order of the court satisfying or discharging the judgment was erroneous.   We should probably be of that opinion if the question as to the correctness of this order was before us.   But it is not.   This is an appeal from an order vacating the order satisfying the judgment, and restoring it in all things against the defendants.   More than two years elapsed from the entry of the order satisfying the judgment before application was made to vacate this order, and

this application was not made until more than a year after the plaintiffs had actual knowledge of it. Now assuming, as we feel fully authorized to do in view of the facts of the case, that the judgment was improperly satisfied in the first instance, and that the plaintiffs would have been entitled to have had the satisfaction set aside, had they made a motion for that purpose in season, the question is, have they lost that right by the delay? By section 38, chap. 125, R. S., it is provided, among other things, that the court may, in its discretion and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding against him through his mistake, inadvertence, or surprise, or excusable neglect. As already stated, we think Johnson was authorized to receive notice of the motion. But inasmuch as he neglected to correspond with the plaintiffs upon the subject of that motion and give them an opportunity to resist it, we think it was a case of "excusable neglect," from which the court might have relieved them, providing they had made the motion within a year from the time they had notice of the entry of the order. *Edwards v. The City of Janesville*, 14 Wis., 26 ; *Johnson v. Eldred*, 13 Wis., 482 ; *Spafford v. City of Janesville*, 15 Wis., 474. But unless the motion is made within a year from the time the party has notice of the erroneous order or judgment, the court cannot relieve under this statute. It must be made within a year, as the power of the court to grant the relief is expressly limited to that period. After the lapse of that time the court cannot relieve a party from an order or judgment against him through his "mistake," "inadvertence," "surprise" or "excusable neglect." This was undoubtedly a case of "excusable neglect," if Johnson was authorized to receive notice of the motion, as we hold he was. See *Park v. Church*, 5 How. Pr. R., 381 ; *Whitney v. Kenyon*, 7 id., 458 ; *Van Benthuysen v. Lyle*, 8 id., 312 ; *Whitehead v. Pease et al.*, 9 id., 35. The counsel for the respondents contends that this statute does not apply to the case, and we are referred

to *Dederick v. Richly*, 19 Wend., 108, and *The Manufacturer's and Mech. Bank v. Boyd*, 3 Denio, 257, in support of the position.    In each of those cases, however, the judgment was entered without authority, against a party not before the court.    Here the attorney of the plaintiffs was served with notice, and appeared on the hearing of the motion.    This circumstance distinguishes the case from those just cited, and renders those decisions inapplicable.

We are constrained, therefore, to reverse the order in this case, because the motion was not made within a year after the respondents had notice of the satisfaction of the judgment.