Brand vs. James.

---

BRAND, Appellant, vs. JAMES, Respondent.

*November 30 — December 14, 1886.*

*(1, 2) Practice: Findings by court or referee: Immaterial issues: Reversal of judgment. (3) Settlement: Evidence: Receipt: Partnership.*

1. When the determination of certain specific issues in a certain way renders other issues immaterial, no finding upon or determination of such immaterial issues need be made by the trial court or ref-

Brand vs. James.

eree. Thus, a finding that there had been a full settlement of the matters in controversy may obviate the necessity for further findings as to the matters embraced in such settlement.

2. The fact that the findings of the trial court or referee embrace matters not in issue will not work the reversal of a judgment sustained by the findings properly made.

3. The evidence in this case (including a receipt in full for all demands, given by the plaintiff to the defendant) is *held* to sustain a finding that there had been a complete settlement and satisfaction of all claims of the plaintiff for moneys advanced and for his individual services and for the joint services of himself and his former partner.

APPEAL from the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The plaintiff is an attorney at law, and was a member of the firm of Stark & Brand, of Milwaukee, from October, 1879, to May, 1884. This action is to recover for legal services and disbursements rendered to and made for the defendant by the firm, between March, 1880, and December, 1882; and in and to which Stark sold and assigned his interest to the plaintiff before the commencement of this action. The complaint is upon three several causes of action: *First*, to recover $3,600 for services so rendered and disbursements so made during said time in and about a suit which had been commenced in the circuit court for Stephenson county, Illinois, prior to March, 1880, growing out of the dissolution and settlement of a copartnership which had existed between Stille, McMillan, and the defendant, *James*, at Freeport, Illinois, under the firm name of D. A. McMillan & Co., and the arbitration thereof; *second*, to recover $350 for services so rendered and disbursements so made during said time in the matters of difference between the defendant, *James*, and one John Williamson; *third*, to recover $500 for services so rendered and disbursements so made during said time in suits against the defendant, *James*, and in favor of one Eric McArthur.

In answering the first cause of action the defendant denied that he ever retained the plaintiff's firm, or that he requested counsel, advice, or assistance from them, or that they did counsel him or render any counsel or service in the matter, or that he was ever indebted to the firm; admits that he did employ the plaintiff personally to advise or assist in the matter, but denied that he was the attorney of record or took any part in the action, except that he assisted the defendant's attorney, Hyde, of Freeport, who had charge of the litigation; and avers that the plaintiff's services in the matter were not worth to exceed $800; that, during the time, the plaintiff received a large amount of property and effects owned by the defendant or in which he was interested, and converted the same into money, and never accounted therefor; that, from time to time, the plaintiff received money and property more than sufficient to pay for the services rendered; that January 15, 1883, he duly paid plaintiff the claim set forth in the first cause of action, and then and there duly satisfied and adjusted the same, and duly received from the plaintiff a good discharge therefor; that said claim was on that day, and before the commencement of this action, duly paid, discharged, and satisfied.

The answer to the second cause of action consisted of substantially the same denials, admissions, and averments, so far as applicable, and alleged that the plaintiff's services therein were not worth to exceed $200. The same is true with respect to the answer to the third cause of action.

November 10, 1884, the cause was referred to James H. Merrill, to hear, try, and determine. A trial having been had, September 12, 1885, the referee made and filed his findings of fact and conclusions of law, to the effect: (1) That the plaintiff had been a practicing attorney at Milwaukee for more than twelve years. (2) That he was a partner with Mr. Stark from October, 1879, to May, 1884,

when the firm was dissolved by mutual consent.   (3) That, in the early part of 1878, the suit was commenced for the dissolution and settlement of the partnership matters of D. A. McMillan & Co.   (4) That the plaintiff and H. C. Hyde, a lawyer at Freeport, were retained at that time by *James* to conduct the litigation; that in March, 1880, pursuant to stipulation and the statutes of Illinois, the cause was referred to Bradly, McDonald, and W. C. Conway, as arbitrators, to hear, try, and determine; that their award was substantially in favor of *James* and Stille, the plaintiffs in the action, and against McMillan; that the plaintiff attended with Hyde all through the arbitration, looked up testimony, prepared statements, examined witnesses, made briefs and an oral argument, and did whatever was required of him; that such award was affirmed by the circuit court, the appellate court, and supreme court of Illinois (105 Ill. 194); that, as the result of the litigation, *James* and Stille received about $60,000.   (5) That the plaintiff's services in that action and arbitration were reasonably worth $2,500. (6) That the plaintiff was retained in the proceedings prior to his partnership with Stark, and such employment by the defendant was personal; that Stark was not specially retained; that the responsibility of the litigation was entirely in the hands of the plaintiff, who with Hyde had sole charge of it; that all correspondence was from and with the plaintiff; that Mr. Stark was not connected with the matter, except on one or two occasions, in the absence of the plaintiff from the office, the defendant consulted with Mr. Stark, and he on one occasion drew papers in the case.   (7) That in 1880 the plaintiff was retained by the defendant to adjust his differences with one John Williamson, and, as a member of said firm, performed services in that matter, which was finally adjusted; and such services were reasonably worth $350.   (8) That in October, 1881, the plaintiff, as a member of said firm, was retained by the

defendant in two suits in favor of McArthur, which were
finally settled before trial, and the services of the firm
therein were reasonably worth $500. (9) That Stark &
Brand dissolved May 1, 1884, and the demands in suit were
on that day assigned by Stark to the plaintiff. (10) That
January 15, 1883, at Milwaukee, said W. C. Conway, act-
ing for the defendant and at his request, paid to the plaint-
iff $3,000, and at which time the plaintiff executed a receipt
to the defendant, expressed to be in full of all demands,
and which receipt appears in the record. (11) That the
payment of that amount was a full payment, satisfaction,
and discharge of all claims or demands which the plaintiff
had at that time against the defendant, either for his indi-
vidual services only or for the joint services of Stark &
Brand; that this settlement was full and complete, with no
reservation, and that all claims of the plaintiff against the
defendant for moneys advanced or services of himself or
of Stark & Brand, and all matters of difference between
the plaintiff and defendant, were by the payment and ac-
ceptance of said $3,000 paid, satisfied, and discharged.
(12) That a few days subsequent to said settlement the
plaintiff sent to the defendant and said Stille all their books
and papers which the plaintiff had in his possession as at-
torney, and that that terminated all business relations be-
tween the parties to this action.

As conclusions of law, the said referee herein found (1)
that the retainer of the plaintiff, while a member of said
firm, by the defendant, was a retainer of the firm; (2) that
January 15, 1883, and before this action, the defendant paid
and satisfied all the individual demands of the plaintiff or
the plaintiff and said Stark against him by payment; (3)
that the defendant was entitled to judgment dismissing the
complaint, with costs.

Upon the hearing of the defendant's motion to confirm
said report, and the plaintiff's motion to set aside and

modify the same, it was ordered by the court that each and every objection and exception made or taken by the plaintiff upon the trial or filed in the cause (all of which were renewed upon the hearing) were thereby overruled; that the plaintiff's motions to set aside said report and modify the same were thereby denied; and it was thereupon further ordered that judgment be entered in favor of the defendant, dismissing the complaint, with costs to be taxed. From the judgment entered accordingly, the plaintiff appeals.

*Geo. H. Noyes,* for the appellant.

For the respondent there was a brief by *Finch & Barber,* and oral argument by *Mr. Barber.*

CASSODAY, J.   It is urged that the findings of the referee were defective and incomplete in failing to specifically find the value of the services of Stark & Brand; the agreement, if any, as to their employment and compensation; the agreement, if any, as to what the plaintiff was to receive for his services prior to the arbitration; whether Williamson was authorized to make an agreement as to such compensation prior to arbitration, and to employ Stark & Brand on behalf of the defendant; what property, if any, the plaintiff had received from the defendant, and which should be applied upon his services; what amount of money, if any, had the defendant paid to the plaintiff prior to January 15, 1883, when the receipt was given for $3,000; what was the state of the account at that time between the plaintiff and the defendant, and the firm and the defendant; what would such account, if stated, show, and to state the same.   Such findings were requested.   Some of them, however, appear to be embraced in the numerous findings made.   Of course, the very object of findings is to determine the material issues in a given case.   There is no necessity, however, for any finding upon or the determination of any immaterial is-

sue. Thus, in *Johnson v. C. & N. W. R. Co.* 64 Wis. 425, it was held, in effect, that an error in submitting a question to the jury for a special finding is immaterial, if the findings upon the questions properly submitted sustain the judgment. From this it seems that the determination of certain specific issues in a certain way may render other specific issues, otherwise material, immaterial.

So the failure to determine a certain specific issue may not be reviewable upon appeal, by reason of the way the other specific issues were determined and the result. Thus, in *Clark Co. Bank v. Christie*, 61 Wis. 9, the specific issue of accord and satisfaction was not determined; but the other issues were found by the jury in favor of the defendant, who obtained judgment. The failure to determine the question of accord and satisfaction was said to be favorable to the plaintiff, because " it eliminated from the case a very material ground of defense to the action." But, had the verdict on the other specific issues been the other way, and judgment entered for the plaintiff, such failure to determine would have been available to the defendant, provided, of course, he kept the record in a condition to present it for review on appeal.

Here it was found by the tenth and eleventh findings, in effect, that there was a full payment, satisfaction, discharge, and settlement of all the matters in controversy, January 15, 1883. Of course, the correctness of these findings is open for review on this appeal by the plaintiff. But if they are sustained by the evidence, then, certainly, with the other ten findings made as above stated, they cover and include " all claims of the plaintiff against the defendant for moneys advanced or services of himself or of · Stark & Brand, and all matters of difference between the plaintiff and the defendant;" for such is the express language of one of those findings. In other words, such determination of such specific issues necessarily determines the whole con-

troversy, and, if properly so determined, entitled the defendant to judgment, and thus rendered immaterial all other specific issues, as they were subordinate to and included in those thus determined.

2. It is said, in effect, that the findings improperly embraced the retainer of the plaintiff by the defendant, and his services for the defendant prior to the employment of Stark & Brand, as those matters were not in issue. But the defendant denied having ever retained or employed the firm, and, so far as the first cause of action is concerned, it was in effect so found. In establishing such denial, the defendant proved, and it was in effect so found, that the plaintiff's retainer in the matters embraced in the first cause of action was long prior to the formation of the firm, and that there was no subsequent retainer or employment of the firm in such matters by the defendant. Besides, as the trial was by referee and reviewed by the court, it is not perceived that the plaintiff could be thereby prejudiced. The same is true respecting the admission of evidence of the plaintiff's retainer and services prior to the formation of the firm.

3. The principal objection to the findings is that they are contrary to the evidence. It is claimed that in February or March, 1878, the plaintiff, as attorney for *James*, drew a power of attorney from *James* to Williamson, giving the latter full power to act for *James* in the matter of D. A. McMillan & Co., and to employ attorneys and counsel therein, in his discretion; that Williamson did employ Hyde, of Freeport, to commence the suit there; that he verified the complaint; that he made a special agreement with the plaintiff, whereby the latter was to receive for his compensation a proportionate share of whatever was realized at the end of the litigation, the amount to depend upon the measure of success; that such arrangement continued down to March, 1880, when it was agreed between

the plaintiff and Williamson that, for the services which the plaintiff had rendered up to that time, he should, at the end of the litigation, receive the sum of $5,000, subject to be increased if the results should be very favorable to the defendant; that the firm of Stark & Brand should be, and was then, retained in said McMillan litigation, and were to receive a reasonable compensation for services to be rendered thereafter in that matter, and be paid therefor from time to time as the work progressed — the total amount of such compensation of the firm to be governed by the final results. The plaintiff testified, in effect, that to the best of his recollection these new agreements were talked over with the defendant and were understood and assented to by him. The defendant denied such authority of Williamson, and also the making of such new agreements and retainer.

The view we have taken of the evidence in the record, after a careful examination, renders it unnecessary for us to consider the merits of that power of attorney or the scope and extent of Williamson's authority under it as disclosed by the parol evidence of its contents and the purposes for which it was given, for the simple reason that we think the referee was justified by the evidence in holding, as he did, that all the matters in controversy in this action were fully paid, satisfied, discharged, and settled January 15, 1883. It appears from the defendant's testimony, in effect, that a short time prior to that, and after all services had been performed, the defendant talked with the plaintiff in relation to his bill or services; that the plaintiff wanted $10,000 or $7,500; that the plaintiff said that he had not had anything; that the defendant asked him if he had not had the boat; that the plaintiff said nothing about Mr. Stark or Stark & Brand's bill. Being unable to agree, they separated, and thereupon the defendant authorized W. C. Conway to settle with the plaintiff. Afterwards Conway

informed him that he had settled everything, including the defendant's claim against the plaintiff for the boat, and that the defendant on that settlement was to pay the plaintiff $3,000, which he did by furnishing Conway with a certified check for the amount. Conway testified, in effect, to having made the settlement with the plaintiff; that they were engaged, backward and forward, from two to five days in doing so; that the plaintiff claimed about $7,000; that *James* thought that the plaintiff ought to have $1,000; that in that settlement Conway offered the plaintiff $3,000, which at first he refused to take; that Conway claimed that the plaintiff had had a boat belonging to *James* worth $1,800, and sold it, and that Conway's own note had been used to raise the money to pay for that boat; that the plaintiff made no claim of any separate bill of Stark & Brand, distinct in itself; that it was discussed how much he had done and what he had done before the arbitrators, of whom said Conway was one; that finally the plaintiff agreed to accept the $3,000; that the next morning he brought in the check; that the plaintiff sat down to write a receipt, and was specifying what the receipt was for, when he objected and said he did not want that kind of a receipt, that he wanted a receipt in full of all demands; that the plaintiff then wrote this receipt: "MILWAUKEE, January 15, 1883. Received of *E. James*, Esq., $3,000, in full of all demands against said *James* to date. M. H. BRAND;" that Conway then told him it was satisfactory, and handed him the check for $3,000; that in such "final settlement there was no reservation or any conditions as to any distinct claim;" that he, Conway, supposed they "were paying him this money in full for all the demands to date, without any reservation whatever;" that the plaintiff made none; that that settlement was made at the office of Stark & Brand; that Conway then told him that if he would pack up all those papers and books and send them up to the defendant

Brand vs. James.

it would close the matter; that the plaintiff said: "All right; I will do it." The referee found that the books and papers were so sent a few days subsequent to the settlement.

Such is some of the evidence on the part of the defense. It is strongly corroborated by other evidence which might be mentioned. From this evidence it appears that each party made claims at first to which the other did not accede; that the final agreement was by way of settlement,— compromise,— essentially an accord and satisfaction. The findings were to that effect; and they were, as we think, within the issues made by the pleadings. Besides, such evidence having been received without objection, the answer may be deemed amended in that particular, if not already sufficiently broad. It is true that there is considerable evidence and some circumstances favorable to the plaintiff's theory; but it is not denied that a settlement was made and that the receipt was given on that settlement. That receipt was written by the plaintiff, and given "in full of all demands against *James* to date." This was in harmony with Conway's testimony. *Prima facie*, the receipt covered and included the matters upon which this action is brought. No fraud or mistake is claimed. We must follow the well-established rule, and sanction the findings of the referee, who was in a better position to determine the facts than this court.

*By the Court.*— The judgment of the circuit court is affirmed.