KAMMERMEYER, Respondent, vs. HILZ and another, Appellants.

*April 28 — May 15, 1900.*

*Action, at law or in equity? Settlement for seduction of daughter: Rights of father and daughter in money paid: Death of child: Parol evidence: Receipts.*

1. After the seduction of plaintiff by P. a settlement was made, whereby, for a gross sum paid by P., the claims of plaintiff and her father were released, and the obligation of P. to support the child born to plaintiff was assumed by her father. The money was all paid to the father. *Held*, that an action by the daughter against the father, to determine and recover the part thereof to which she was entitled, is an action at law, but maintainable on equitable principles.

2. A father and daughter having settled, for a gross sum paid the father, all their claims against P. for the seduction of the daughter, and the father having by such settlement agreed with P. to support and maintain the child born to the daughter, the fact that the child died soon after does not increase the amount the daughter is entitled to: she is only entitled to such portion of the money paid, as, in the contemplation of the parties, was paid in satisfaction of *her* claim.

3. The memorandum of settlement with P. being in writing, admission of the testimony of P. to the effect that the money was paid over for the benefit of the daughter was error.

4. In the absence of fraud or mistake a payment cannot be shown to relate to a subject matter different from that stated in the receipt given therefor.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

Kammermeyer vs. Hilz and another.

The complaint sets out that the defendants in April, 1891, received from one Priest the sum of $2,850, to the use of the plaintiff. The answer of the defendant *Adam* alleges that the plaintiff is the daughter of the defendants; that while under age she was seduced by Priest; that he commenced a suit to recover his damages for such seduction; that Priest paid $3,000 in settlement of the suit, and $200 was paid for attorney's services; that plaintiff had no claim thereon and was not entitled to any part thereof. The other defendant, who is the wife of *Adam*, denied that any part of said money was ever received by her.

The action came on for trial before the court and a jury. The proof showed: That plaintiff was the child of defendants, born before wedlock, on March 29, 1870. While working for one Priest she was gotten with child, which was born December 25, 1890. The defendant *Adam* employed an attorney to bring a suit for such seduction, and after some negotiations the matter was settled without suit by Priest paying $3,000 in full for all claims of either plaintiff or defendants, $2,850 of which sum was paid to the defendant *Adam*. At the time of this settlement, Priest and *Hilz* entered into a contract by which the latter agreed to care for, bring up, and maintain the plaintiff's bastard child, to educate, clothe, and support it in a suitable manner, and save Priest harmless from all claims on account thereof. At the same time *Hilz* executed and delivered a bond to secure the performance of this agreement, in the sum of $2,000. As a part of the same transaction the plaintiff and the defendants executed and delivered to Priest a receipt under seal, in which, in consideration of the sum of $3,000, they acknowledged settlement in full for all demands of either party arising out of the seduction, birth of child, loss of service, and the care, support, and education of the child. The child died about four months afterwards. The proof showed that *Hilz* carried out the terms of the contract men-

tioned on his part. In 1895 the plaintiff made claim against her parents for this money. At that time defendants paid plaintiff $600, and took a receipt which recited that it was payment in full of any claim which the plaintiff had, " or may have after their death, as heir."

After the evidence was all in, the court announced that he had come to the conclusion that "this money was put out in trust, not for the woman, but for the child," and thereupon he prepared and submitted a special verdict, which, with the answers of the jury, is as follows: "1. Did A. W. Priest on or about the 25th day of March, 1891, pay to the plaintiff and the two defendants the sum of $3,000, less attorney's fees, leaving the balance of $2,850, the amount which they actually received; and did they, in consideration of said payment, discharge, release, satisfy, and acknowledge full payment and satisfaction of, all damages, claims, and demands, settled or unsettled, liquidated or unliquidated, accruing or that might thereafter accrue, arising or that might thereafter arise, by reason or growing out of the plaintiff, *Catherine Kammermeyer* (then Hilz), having been begotten with child by the said A. W. Priest, which child was then living, and for the seduction of the said *Catherine*, and for having carnal intercourse with the said *Catherine*, and for the loss of her services; and was it provided in said receipt that it should cover and include all claims, demands, damages, and causes of action of every kind and nature which the plaintiff and the defendants, or either of them, had against the said A. W. Priest by reason of the aforesaid, and his (Priest's) relations with said *Catherine Kammermeyer*, formerly Catherine Hilz, and so begetting her with child, including the rearing, bringing up, educating, maintenance, and support of the said child of said *Catherine Kammermeyer*, formerly Catherine Hilz, and said A. W. Priest? *A. (by direction of the court)* Yes. 2. Did the defendants receive said money and appropriate and use

it as their own money? *A.* (*by direction of the court*) Yes. 3. Did the said child of the plaintiff and the said A. W. Priest die when the same was about six months old? *A.* (*by direction of the court*) Yes. 4. Did the plaintiff intermarry with one Joseph Kammermeyer on or about the 7th of December, 1893, and has she from that time forward lived with her said husband? *A.* (*by direction of the court*) Yes. 5. Taking into account all that the defendants did for the plaintiff and for her said child after the birth of said child and immediately prior thereto, and the loss of her services, also taking into account her seduction, and all advances and payments made to her by the defendants, and all the other facts and circumstances of the case as disclosed by the evidence, what proportion of the said $2,850 should, in equity and good conscience, be retained by the defendants, and what proportion should be paid to the plaintiff by them? *A.* Defendants, $520; plaintiff, $2,330. 6. Was the receipt of March 23, 1895, given to *Adam* and *Catherine Hilz*, the defendants in this action, by *Mrs. Katie Kammermeyer*, for $600, given and intended and received in discharge of the plaintiff's claim upon the money paid to the defendants by said A. W. Priest? *A.* No."

The defendants moved to set aside the verdict, which motion was denied. Thereupon the court made findings of fact and conclusions of law, adopting the findings of the jury in the special verdict, and in which he directed judgment for the plaintiff for $2,330 and interest, amounting in all to $3,203.75, besides costs against both defendants. The defendants filed numerous exceptions to the judge's charge and to the findings, and bring the action here for review on an appeal from the judgment.

*J. C. Officer*, for the appellants.

For the respondent there was a brief by *Bloodgood, Kemper & Bloodgood* and *Whitman & Ryan*, attorneys, and *Wheeler P. Bloodgood*, of counsel, and oral argument by *A. B. Whitman* and *Wheeler P. Bloodgood*.

Kammermeyer vs. Hilz and another.

Bardeen, J.   This case presents some very novel features.
The complaint shows that it is a straight action at law for
money had and received.   After the evidence was all in, the
court conceived the idea that it was an action to enforce
a trust, and thereupon, against defendants' objections, sub-
mitted special findings to the jury, and made findings of fact
and conclusions of law as in an ordinary equity suit.   If the
conclusion that this is an action to enforce a trust can be
justified, still there was no warrant in our practice for turn-
ing the case into an equitable proceeding, against the de-
fendants' objection.   The evidence introduced was proper,
under the complaint, to establish the claim for money had
and received.   Hence no question of waiver by failure to
object thereto can be invoked.   There are cases in which
evidence has been received without objection which has virt-
ually changed the action from law to equity, and the judg-
ment has been sustained on the ground of waiver and failure
of the party to make timely objection.   This is not such a
case.   But the fact of whether the court has or has not the
power to make such transformation is not important in this
case, because we are clearly of the opinion that the view
taken of it by the trial court was erroneous.   The evidence
fails entirely to disclose a trust, and hence the action of the
court in parceling up the issue was distinctly prejudicial to
the defendants, and the result is a mistrial.   The status of
the parties and their legal liability to each other was fixed,
and must be determined, by the written contract, bond, and
receipt executed when the transaction was closed.   Prior to
the alleged seduction the plaintiff had been a member of the
defendants' family, and had been recognized and treated as
a daughter.   No question seems to be raised but that the
relation was sufficient to sustain a claim for the seduction.
Under these circumstances, the father had a claim against
Priest, which included loss of services of the plaintiff, she
being under age; expense incurred by reason of the preg-

nancy and confinement, or other illness; the anxiety and suffering of mind caused by the loss of virtue of his daughter; the corrupting influence upon the morals of his other children; and the disgrace and dishonor to his family. 21 Am. & Eng. Ency. of Law, 1031. In addition, under the terms of the settlement, the defendant *Adam* took upon himself the burden of bringing up, rearing, educating, and supporting the child, and agreed with Priest to save him harmless from all claims or demands in that regard. From the very nature of the situation, the amount of this burden was uncertain and unascertainable, and depended upon the contingency of the child living, its condition of health, and other circumstances as uncertain as life itself. As a part of the same settlement, the plaintiff released to Priest all claim or demand she had against him. As the father of the child, Priest was bound to provide for its support and maintenance. The claim of the mother arose from the necessity of caring for the child, giving it motherly care, and looking after its comfort, and Priest was under a high moral obligation to make her future as easy in that regard as was consistent with his circumstances.

Sec. 1532, Stats. 1898, recognizes the right of the person accused of being the father of a bastard child to settle with the complaining female by paying or securing to be paid to her "such sum of money or other property as she may agree to receive in full satisfaction" of her wrongs. The accused is also required to enter into bonds to save the authorities harmless from all charges for the maintenance of the child, and for the lying-in and support and attendance of the mother during her sickness. Independent of the statute, the female had no cause of action against her seducer, but under it she was entitled to demand such sum as she might agree to receive in satisfaction of her wrongs. The settlement in this case included the father's claim for seduction, the obligation of the accused to support and maintain the

Kammermeyer vs. Hilz and another.

child, and the mother's claim for satisfaction, all bunched
into one sum.   The money was paid over to the father, and
held by him.   The receipt taken, which, by the way, must
be treated as a contract, recites that, in consideration of the
sum of $3,000, the signers released Priest from all of the
claims above mentioned, and which was to be in full satis-
faction and release of all claims of either party upon him
for the seduction, carnal ·intercourse, loss of services, ex-
penses, and support and education of the child.   The re-
ceipt, however,· fails to designate how much of said sum was
to be applied to the satisfaction of either of the claims men-
tioned.   As her natural guardian, the father took the share
given to the daughter.   She was entitled to some share of
the money, and the purpose of this action was to ascertain
how much that share was.   An action of this kind has al-
ways been considered an action at law, but is maintainable
on equitable principles. *Western Ass. Co. v. Towle,* 65 Wis.
247.   The plaintiff was therefore entitled to recover such
share of the money paid to her father as, under all the cir-
cumstances of the case, she was justly entitled to.   It was.
a question for the jury to determine, under proper instruc-
tions, and not for the court.   The father had a right to re-
tain all his damage for the seduction, including the elements,
hereinbefore stated, of expense, loss of services, sense of
shame and humiliation, and the like, and also such sum as.
the jury might find the parties contemplated might be re-
quired ·for the support and education of the child, had it.
lived.   The father entered into a contract and bond to take
care of the child, and the fact that it died a few months.
afterwards does not increase the amount the plaintiff is en-
titled. to.   The mother is entitled to such portion of the
money paid over as, in contemplation of the parties, was.
paid in satisfaction of *her* claim, and no more.   There being
nothing in the written contract of settlement to show the
share of each, evidence to show the entire situation was.

proper, in order to give the jury some basis upon which to found a conclusion.

The evidence of Priest to the effect that the money was paid over for the benefit of the mother was improper, as varying the terms of the written contract of settlement. In the absence of fraud or mistake, that instrument must speak for itself. As indicated by the special verdict and the instructions of the court, the case was submitted to the jury upon an entirely different and erroneous theory.

It was claimed by defendants that, after the plaintiff had made a demand for a portion of this money, they paid to her the sum of $600 in satisfaction of her claim. A receipt was taken, which reads as follows:

"Received from *Adam* and *Catherine Hilz* six hundred dollars, being in full payment of any claim which I have, or may have after their death, as heir.

"MRS. KATIE KAMMERMEYER."

On its face it relates to an entirely different matter, and, unless it was clearly shown that there was some mistake or fraud in the writing, it was conclusive on the parties. *Brand v. James*, 67 Wis. 541.

What has been said is deemed sufficient to indicate the plan that should be pursued upon a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.