KAMMERMEYER, Respondent, vs. HILZ and wife, Appellants.

*December 18, 1902—January 13, 1903.*

*Equity: Reformation of receipt: Equitable issues: Special verdict:
Findings: Evidence.*

1. On the trial of an issue whether a written receipt for the payment
   of money should be reformed, so as to express that the amount
   paid was in full payment, settlement, satisfaction and discharge
   of any and all claims held by the receiptor, the verdict of the
   jury is merely advisory.

2. Where a special verdict taken on the trial of an equitable issue
   is adopted by the court it must be regarded as the findings of
   the court.

3. On the issue whether a written receipt for the payment of money
   should be reformed, so as to express that the amount paid was
   in full payment, settlement, satisfaction and discharge of any
   and all claims held by the receiptor, the evidence (stated in the
   opinion) is *held* to establish the right to such reformation.

APPEAL from a judgment of the circuit court for Milwau-
kee county: LAWRENCE W. HALSEY, Circuit Judge. *Re-
versed.*

This action was commenced January 11, 1887, to recover
$2,850, alleged to have been received by the defendants
March 25, 1891, for the use and benefit of the plaintiff, under
the following circumstances: The plaintiff is the daughter of
the defendants, and was formerly known as *Kittie Hilz.*
When she was about twenty years of age, she was begotten of
a child by one A. W. Priest, a married man, in whose employ
she was at the time. The child was born December 25, 1890.
A short time afterwards the defendant *Adam Hilz* employed
an attorney and threatened to bring suit against A. W. Priest
for the seduction, whereupon, and on March 25, 1891, Priest
settled with the defendants by paying to their attorney $3,000.
The attorney retained $150, and paid the balance of $2,850
to the defendant *Adam Hilz,* who at the same time and in con-
sideration therefor agreed with Priest in writing to bring up,

maintain, educate, clothe, and support the child, and save
Priest harmless from all claims on account thereof, and gave
a bond to secure such agreement. The child died in June,
1901. December 7, 1893, *Kittie* was married to Kammer-
meyer. In the winter of 1895 the plaintiff made demand
upon the defendants for the money so received by them from
Priest, and thereupon, and after some negotiations, and on
March 23, 1895, the defendants paid to the plaintiff $600,
and took from her a receipt in the words and figures follow-
ing:

"$600          Milwaukee, Wis., March 23, 1895.

"Received from *Adam* and *Catharine Hilz* six hundred dol-
lars ($600), being in full payment of any claim which I have
or may have after their death as heir.

"Mrs. KATIE KAMMERMEYER."

Nearly two years afterwards the plaintiff commenced this
action to recover the whole of the $2,850, with interest from
the time of making such demand. The defendant *Adam*
answered by way of admissions, denials, and counter allega-
tions, alleging the settlement with Priest, a counterclaim for
expenses for and in behalf of the plaintiff, and the settlement
with her of March 23, 1895, by paying the $600 and taking
the receipt mentioned. The defendant *Catharine* answered,
and denied having received any of the money. Such issues
were tried, and as a result of the trial the jury found by
special verdict, among other things, that of the $2,850 the
defendants were entitled to $520 and the plaintiff to $2,330.
The judgment entered thereon was reversed by this court May
15, 1900, and the cause was remanded for a new trial. 107
Wis. 101, 108, 82 N. W. 689. Upon the *remittitur* being
filed, the defendant *Adam,* by leave of the court, amended
his answer and counterclaim therein, among other things, by
alleging, in effect, that the receipt by mutual mistake and
misunderstanding failed to embody the agreement upon which
the $600 was so paid March 23, 1895; that by the terms of

that agreement the $600 was to be a full payment, settlement, satisfaction, and discharge of any and all claims which the plaintiff had or might have in any portion of the $2,850; and that the receipt was intended to be drawn and was supposed to have been drawn so as to express such agreement, but that the scrivener had failed to so draw the receipt; and asked and demanded that such receipt should be reformed so as to express the true agreement, and so as to read as follows:

"$600.                    Milwaukee, Wis., March 23, 1895.

"Received of *Adam* and *Catharine Hilz* the sum of six hundred dollars ($600) in full payment, settlement, satisfaction, and discharge of any and all claims which I have or may have in any portion of the $2,850 received by *Adam Hilz* from A. W. Priest for his and my benefit.

"Mrs. KATIE KAMMERMEYER."

The plaintiff, by way of reply, put in issue such equitable counterclaim. At the close of the trial the jury returned a special verdict, wherein they found, by direction of the court, in effect, the payment of the $3,000 by Priest, March 25, 1891; the giving of the receipt therefor, signed by the plaintiff and the defendants; and the contract of that date between the defendants and Priest, mentioned. The jury further found, in effect: (2) That of the sum mentioned Priest paid $1,425 for the use of the plaintiff; (3) that the defendants had not established under their counterclaim set up in the answer any claim for expenses for which they are entitled to damages against the plaintiff; (4) that the plaintiff and defendants did not, on or just prior to March 23, 1895, enter into an agreement to settle for $600 the plaintiff's claim against the defendants for her portion of the $2,850 received from Priest; (5) that there was no mutual mistake in drawing the first receipt mentioned, and that receipt did not fail to express the true agreement between the parties, and there was no agreement that it should be a full release and satisfaction of the plaintiff's claim for such money; (6) that the $600 was not agreed and intended by the parties to be a par-

tial payment of the plaintiff's claim against the defendants thereon; (7) that the agreement actually reduced to writing March 23, 1895, expressed the intention of the parties, and the plaintiff intended thereby to release all claim and right as heir. Thereupon the court found the facts to be as in such special verdict of the jury set forth, which verdict was adopted by the court, and the several facts therein found specifically reiterated in effect. As conclusions of law the court found, in effect, that the defendants were not entitled to a reformation of the receipt first mentioned as prayed; that the plaintiff was entitled to judgment dismissing the equitable counterclaim set forth in the defendant's amended answer for reformation of the receipt. From the judgment entered upon such special verdict and findings of the court in favor of the plaintiff for $2,358.38 damages and $483.89 costs the defendants bring this appeal.

*E. M. McVicker,* for the appellants.

For the respondent there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *J. B. Kemper* and *A. B. Whitman,* of counsel, and oral argument by *Mr. J. B. Kemper* and *Mr. Whitman.*

CASSODAY, C. J. When the case was here on the former appeal, it was presented as an action at law triable by jury. 107 Wis. 101, 82 N. W. 689. After the cause was remanded to the trial court on reversal, an equitable counterclaim was interposed to the effect that March 23, 1895, the defendants paid to the plaintiff the $600 mentioned in full payment, settlement, satisfaction, and discharge of any and all claims which the plaintiff had or might have in any portion of the $2,850 mentioned, and asked to have the receipt given therefor at the time reformed so as to express such agreement. Such equitable counterclaim was put in issue by a reply. The trial of that issue was for the court. Of course, it was competent for the court to take an advisory verdict of the jury, as

it did; but such verdict was not binding upon the court, as in an action at law. The special verdict was adopted by the court, and must be regarded as the findings of the court. The important question is whether such findings are against the clear preponderance of the evidence. It is undisputed that Priest paid the $3,000 March 25, 1891, to settle a suit then threatened against him by the defendants by reason of his getting their daughter, the plaintiff, with child; and that the terms of such settlement were in writing, signed by the parties. The plaintiff was a party to that settlement, and signed some of the papers. It is also undisputed that such writings were silent as to any portion of the money belonging to the plaintiff, unless it is to be inferred from the agreement on the part of the defendants to care for, bring up, maintain, educate, clothe, and support the child, and save Priest harmless from all claims on account of his being the father of the child. Priest testified, against objection, to the effect that it was understood at the time that the money was to be used to bring up and educate the child, and for the benefit of the plaintiff; that he "went there with the money to settle, and what" he "wanted was to be absolutely released from any further liability on account of this entire matter." Priest is contradicted in some respects by other witnesses, but it is obvious, even from the testimony of Priest, that a large portion of the money was to settle the claim made against him by the defendants, and to secure from them the agreement above mentioned. Assuming that the money was to be in part for the use and benefit of the plaintiff, still the question recurs whether the plaintiff's claim therefor was not fully settled, satisfied, and discharged by the payment of $600 made to her by the defendants March 23, 1895. The plaintiff made no claim to any portion of the money received by the defendants from Priest until more than a year after she was married, and nearly four years after the settlement with Priest. It does not just appear when she first made claim to the money,

or any part of it, from the defendants. The complaint alleges that she first demanded the money from the defendants January 30, 1895. She testified that she employed counsel to get the money. A letter in evidence to the defendant *Adam* from her attorneys dated February 12, 1895, is to the effect that she was not satisfied with his proposition to give her a lot worth $300 or $400; that she claimed *"half of the money, $1,400;"* and if he had not that amount on hand, and could not raise it on his property, she would, if he preferred, take "$600 in cash and a lot in North Milwaukee." Under date of February 26, 1895, the plaintiff wrote the defendants to the effect that she wanted them to let her "have $1,000 of the money" they had "received from Priest, and to settle this matter;" that, as the papers were written, she "would always have a right to prosecute, for" she "was allowed nothing at all." Soon after the plaintiff wrote to the defendants: "I agree to the $600. If you lost more than I did,—that the most of it belonged to you,—why, then, it is all right. However, I always thought differently, and the law, too, is different. *If the 'sin money'* brings you luck, well, we will see. Perhaps the time will come when you wish that you had acted differently." Under date of March 13, 1895, the plaintiff again wrote to the defendants, in effect, requesting them to let her know when they could give her the money, as it was wanted in a pending deal; that she would expect a "reply by the following Monday at the latest, for" they could "get the few hundred dollars any time;" that, if they put off the matter indefinitely, so that the pending deal came to nothing, then she would "not be satisfied with the $600"; that she was "acting square enough by showing" her "good will in agreeing to the little"; that she did not think the lawyers would "be satisfied with so small an amount"; that she looked "for an early reply as to when" they would give her the money. In pursuance of such negotiations the defendants paid the plaintiff the $600 March 23, 1895, and took the receipt first men-

tioned. It appears from the clear preponderance of the evidence that the amount so paid was to be in full payment, settlement, satisfaction, and discharge of any and all claims which the plaintiff had to any portion of the $2,850 which the defendants received from Priest, and the trial court improperly refused to reform the receipt so as to express the settlement so agreed to by the parties to this action. Such equitable counterclaim is clearly established by the clear preponderance of the evidence. It is unnecessary to repeat the evidence. This conclusion makes it unnecessary to consider any of the other numerous errors assigned.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to sustain the equitable counterclaim, and to dismiss the action.