Lippert, Respondent, vs. Saginaw Milling Company, Appellant.

*December 8, 1900 — January 8, 1901.*

*Written contract of sale: Place of delivery: Ambiguity: Evidence: Damages for delay.*

1. A written contract for the sale of beans "delivered East St. Louis" is plain and unambiguous, and parol evidence as to the meaning of the word "delivered" is not admissible.

2. Defendant sold to plaintiff a car load of beans, to be shipped immediately and delivered at East St. Louis, and on the same day plaintiff contracted to sell them to another person at said place. Three weeks later plaintiff's vendee canceled his contract because of defendant's delay in delivering the beans, and defendant afterwards admitted its responsibility for such delay, but declined to take the beans back or take charge of their sale or advise what should be done with them. Plaintiff afterwards sold them at a loss. *Held,* that defendant was liable for the damages caused by the unnecessary delay in delivering the beans.

3. The recoverable damages in such a case do not include traveling expenses of plaintiff, lawyer's fees, or money paid for photographs, telegrams, exchange, etc., but are limited to such as are reasonably considered to have been in contemplation of the parties, at the time of making the contract, as the probable result of its breach.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Roemer & Aarons*, and oral argument by *C. L. Aarons*. They contended, *inter alia*, that it was error to refuse to allow defendant to show that the word "delivered," as used in the correspondence of the parties, had a peculiar significance among bean dealers, and that it signified that the price included the freight to the place named and did not refer to the place where title should pass. *McLaughlin v. Marston*, 78 Wis. 670; 2 Jones, Ev. §§ 461, 462; *Ganson v. Madigan*, 15 Wis. 144, 153; *Scott v. Neeves*, 77 Wis. 312; *Janesville C. Mills v. Ford*, 82 Wis. 416; *Becker v. Holm*, 89 Wis. 86; *Gehl v. Milwaukee P. Co.* 105 Wis. 580; *A. J. Neimeyer L. Co. v. B. & M. R. R. Co.* 40 L. R. A. 534, 537; *Tregelles v. Sewell*, 7 Hurl. & N. 574. In the absence of an express agreement to the contrary, delivery by a vendor to a carrier passes the property to the vendee. 21 Am. & Eng. Ency. of Law, 528–530; *Doyle v. Roth Mfg. Co.* 76 Wis. 48, 54; *Ramsey & Gore Mfg. Co. v. Kelsea*, 22 L. R. A. 415, and note. The consignment of the carload of beans to the plaintiff, and his acceptance and indorsement of the bill of lading, certainly passed the property to him. *Doyle v. Roth Mfg. Co.* 76 Wis. 54; *Sarbecker v. State*, 65 Wis. 171; *Swanke v. McCarty*, 81 Wis. 111; Usher, Sales, § 232; Newmark, Sales, § 152; 2 Schouler, Personal Prop. (3d ed.), §§ 264, 273; *Thomas Emery's Sons v. Irving Nat. Bank*, 25 Ohio St. 360; *Merchants' Nat. Bank v. Bangs*, 102 Mass. 291. The terms of the bill of lading complied with plaintiff's directions, and the actual payment by the plaintiff of the draft attached to the bill of lading removes all doubt that the parties intended that the title to the goods should pass to the plaintiff at the time of shipment from Saginaw. *Stock v. Inglis*, 12 Q. B. Div. 564; *Dows v. Nat. Exch. Bank*, 91 U. S. 618. This being the case, the defendant having delivered the goods in accordance with the contract to the carrier at Saginaw, it is not responsible for the delay, if any, in reaching East St. Louis, and instead of

directing a verdict for the plaintiff it should have been directed for the defendant.

For the respondent there was a brief by *McElroy & Eschweiler*, and oral argument by *F. C. Eschweiler*. They argued, among other things, that the title remained in the defendant until East St. Louis was reached. *Hooper v. C. & N. W. R. Co.* 27 Wis. 81, 91. Oral evidence could not be given of the meaning of the word "delivered." *Elofrson v. Lindsay*, 90 Wis. 203; 2 Jones, Ev. § 460.

CASSODAY, C. J.   This is an action to recover $310.15, with interest on $246 from August 25, 1897, as damages for failure to ship from Saginaw, Mich., and deliver to East St. Louis, Ill., a car load of beans, at the agreed price of $450.50, according to the contract, whereby the plaintiff lost the sale thereof.   The defendant answered by way of admissions, denials, and counter allegations, and also set up two counterclaims, arising out of other transactions, one for $38.60, and the other for $25.86.   At the close of the trial the court directed a verdict in favor of the plaintiff upon the defendant's counterclaims, and also upon the cause of action alleged in the complaint, except as to the amount of damages, and the question of the amount of damages was submitted to the jury, and they returned a verdict in favor of the plaintiff, and assessed his damages at $342.13.   From the judgment entered thereon for that amount and costs the defendant brings this appeal.

The following facts are admitted or appear from the undisputed evidence, consisting of correspondence between the parties:

During the times mentioned the plaintiff resided at Milwaukee, and was engaged in the business of buying and selling beans and other products.   The defendant was and is a corporation existing under the laws of Michigan, and having its principal place of business at the city of Saginaw, in

that state.  On October 6, 1896, the plaintiff telegraphed
the defendant: " Wire immediately lowest car hand-picked
pea-beans, delivered Altona, Pa.; also car delivered East
St. Louis." The defendant immediately answered: "Altona,
one five; East St. Louis, one three." On the same day the
defendant answered by letter containing this statement:
"Just received your dispatch, 'Altona, one five; East St.Louis,
one three.' " On October 7, 1896, the plaintiff telegraphed
the defendant: " Ship immediately choice new hand-picked
pea-beans, East St. Louis, your quotation.  Make me con-
signee and consignor.  Draw First National, Milwaukee.
Bill of lading attached." On the same day the plaintiff
wrote the defendant, reciting such telegram and order, add-
ing: "I hereby confirm to have bought of you car same as
above, at $1.03 East St. Louis.  You will please make me
consignee and consignor,— that is, to have it appear as
shipped by *H. H. Lippert*, and consigned to *H. H. Lippert*,
East St. Louis,— and you can draw with these bills of lading
through the First National Bank of Milwaukee, and your
drafts will be duly protected.  I trust the goods will be
first-class stock, and I wish you would ship them imme-
diately." On the same day the defendant wrote the plaint-
iff: " We have your two wires accepting our offers on beans
to Altona, Pa., and East St. Louis, Ill., at $1.05 and $1.03,
respectively.  We have entered the orders, and will make
shipment as early as possible.  The shrinkage on beans is
unusually large this year, and it will therefore take us a
little longer than usual to do the picking.  We will be un-
able to make the shipment inside of a week's time, but we
are putting on more pickers daily, and by the first of next
week we will be able to turn out a car each day.  Thank-
ing you for the orders, and soliciting your further favors,
we remain," etc.  On the same day the plaintiff sold the
same car load of beans to the Meyer-Schmidt Grocer Com-
pany, of East St. Louis, and received from that firm on that

same day a dispatch as to that same car load of beans, as follows: "Accept offer. Please ship promptly."

On October 8, 1896, the plaintiff wrote the defendant to "hurry the car along for Altona and East St. Louis." The bill of lading of the car shipped by the defendant to East St. Louis reads: "October 12, 1896. Michigan Central. Received from *H. H. Lippert*. Shipped from Fergus Falls, Michigan, to East St. Louis. Consigned to the order of *Henry H. Lippert*, of East St. Louis, Illinois, 200 bags of beans, *to stop off at Saginaw*. The car is 30,011, and it goes by way of the Clover Leaf Railroad." Indorsed on the back, "*Henry H. Lippert*." On October 16, 1896, the plaintiff wrote to the defendant in respect to the same car load of beans: "I wish you would hurry the East St. Louis car along now, as the parties have written me for this car." On October 17, 1896, the Meyer-Schmidt Grocer Company wrote the plaintiff in respect to this car: "We are surprised at not receiving invoice and papers from you for the car of beans we purchased from you fully two weeks ago. We are needing the stock, and think the car should have been shipped before this. Please advise us immediately why the stock has not been forwarded, and if the car was shipped to-day please have a tracer started after it." On October 19, 1896, the defendant drew on the plaintiff for the price of this car load of beans this draft: "Pay to the order of G. B. Morley, cashier, $450.50, value received, and charge to account of *Saginaw Milling Company*." That draft was accepted by the plaintiff October 21, 1896, and paid by him October 22, 1896. On October 28, 1896, the plaintiff received from the Meyer-Schmidt Grocer Company this dispatch, in respect to this same car load of beans: "Car beans not here yet. Start wire tracers for it quick." On October 29, 1896, the plaintiff telegraphed the defendant: "Wire tracer car East St. Louis. Has not arrived yet." On the same day he received,

from the Meyer-Schmidt Grocer Company this dispatch: "Account delayed shipment, delayed delivery, improper method shipping, decline take car beans. No notice of arrival." On November 4, 1896, the Meyer-Schmidt Grocer Company wrote to the plaintiff: "We are in receipt of yours of the 3d inst. We have heard nothing from the car of beans, and wired you October 29th to cancel order for the beans. We trust you have canceled this order, as we cannot use them now, under any consideration." On November 5, 1896, the Meyer-Schmidt Grocer Company wrote to the plaintiff: "We have to-day received notification from the railroad company that the 200 bags of beans are in East St. Louis. We wired you, also wrote you two letters, declining to take the car when it arrived, as it is now over a month since we sent you the order."

On November 5, 1896, the plaintiff wrote to the defendant to the effect that he was having more trouble with beans shipped from the defendant's place than with any one else; that either the railroad company was not attending to things properly, or something was wrong elsewhere; that up to that time he would only get an advance of two cents per bushel, and that now the market had declined, and this car of beans was on his hands in another market. The defendant wrote to the plaintiff November 6, 1896: "Yours of the 5th inst. received, and contents fully noted. The delay in arrival of your car certainly warrants you in making complaint. The St. Louis car we find was *delayed* in the railroad yards here *several days* on account of a mistake in the transfer number of the car. In addition to this, we may have been somewhat slow in making the shipment. Of course, the whole matter lies in the fact that beans have declined. In regard to the St. Louis car, get your customer to take the car at a small reduction, and we will pay you what you think right in the matter. Let us hear from you when you have made a settlement."

On November 24, 1896, the plaintiff drew on the defendant for $450.50, and sent the same to the defendant, with the original bill of lading attached. On November 25, 1896, the defendant replied: "Yours of the 24th is received. We do not quite understand your advice in regard to drawing on us for the amount of our invoice of October 29th. We have been willing to meet you half way in regard to this car, and allow you to sell to other parties and draw back on us for the difference. The beans were sold and shipped to you in good faith, and cannot understand how you can positively refuse, under the circumstances, to carry out your part of the agreement. We have no one in St. Louis to whom we could make a sale. We would ask that you do what you can to dispose of the car at once, and in the meantime we will have to refuse your draft."

The plaintiff received from the carrier at Toledo, Ohio, this letter: "Will you please advise disposition at once car of beans from Chesaning, Michigan, October 13th, to your order East St. Louis. Shipment is in our way." About that time the plaintiff learned that the car was in the "Belt Warehouse," East St. Louis. On December 16, 1896, the plaintiff wrote the defendant: "The car of beans at St. Louis is still there, and I have ordered same into a warehouse, as it is impossible to do anything with the declining market." On December 17, 1896, the defendant answered: "We trust you will be able to dispose of the St. Louis car to advantage a little later." The plaintiff replied to that letter: "If no disposition Saturday, store; insure 500 my account." On February 12, 1897, the plaintiff telegraphed to the defendant: "Am offered 75 cents St. Louis car, October 19; advise what to do." On the same day the defendant telegraphed to the plaintiff: "Have nothing to say about St. Louis car."

The plaintiff placed the beans in the hands of Moore Bros., of St. Louis, Mo., for sale in April, 1897. They tried to sell the beans from that time until August 25, 18)7, when the

car load was sold for $348.60, from which amount was to be deducted $134.10 warehouse charges, and $10 brokerage, making $144.10, leaving the net amount realized $204.50.

The contract being plain and unambiguous, and thus in writing, there is no room for any controversy or the admission of parol evidence as to its meaning. The defendant was to ship the beans immediately. The plaintiff was to pay $1.03 per bushel for the beans, to be delivered at East St. Louis. The plaintiff had contracted to sell the beans on the same day he contracted to buy them. The next day the defendant was directed to hurry up, and eight days afterwards that the purchaser was. waiting. Three weeks after the plaintiff's contract to purchase from the defendant and his contract to sell to the St. Louis party, that party had canceled his contract with the plaintiff by reason of the defendant's delay in delivering the beans at St. Louis. A week afterwards the defendant in writing admitted its responsibility for such delay. The defendant declined to take the beans back, or to take charge of the sale, or to advise what should be done with them. The trial court properly held, in effect, that if it could be shown that there was any unnecessary delay which led to loss, or if the beans were dealt with improperly, that might be considered in the reduction of damages; that if the defendant had any evidence tending to reduce the damages he would hear it. We perceive no error in holding, as a matter of law, that the defendant is liable for such damages as were caused by the unnecessary delay in delivering the beans at St. Louis. The question whether the carrier was liable for such delay is not here involved.

But the damages claimed and allowed are clearly excessive. We are not aware of any rule of law which authorizes a recovery for expenses to Saginaw, for a lawyer at East St. Louis, and moneys paid for photographs, telegrams, exchange, and sundries. Actionable damages for a breach of

a contract are limited to such as are reasonably considered to have been in contemplation of the parties, at the time of making such contract, as the probable result of its breach. *Bradley v. C., M. & St. P. R. Co.* 94 Wis. 46; *Kennedy v. South Shore L. Co.* 102 Wis. 288. Here the net receipts on the final sale were $204.50. Deducting this from the amount paid by the plaintiff on the defendant's draft, October 22, 1896, $450.50, with $23.15 interest thereon, making $473.65, leaves $269.15, with interest thereon from the time of the recovery of the verdict, as the true amount which, upon this record, the plaintiff is entitled to recover.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial, unless the plaintiff, within thirty days after filing the *remittitur* herein, elects to remit such excess and take judgment for the true balance as stated, in which case judgment is to be entered for that amount in favor of the plaintiff, with costs. Rule XXXII of this court.

BARDEEN, J., took no part.

