LOEHR, Appellant, vs. DICKSON, Respondent.

*December 11, 1909—January 11, 1910.*

(1) *Torts: Lawful acts causing injury: Malicious intent.* (2) *Pleading: Demurrer.* (3–8) *Contracts: Preventing performance: Strict foreclosure of land contract: Breach of duty to receive payment: Damages: Authority of attorney at law.*

1. Lawful acts are not transformed into torts by the fact that inconvenience or pecuniary injury results therefrom to another person, or even by the fact that they were done with malicious intent to injure.

2. Although a complaint, as construed by plaintiff himself, does not state a cause of action, a general demurrer thereto should not be sustained if, liberally construed, it states facts from which any liability results.

3. One who by mutual contract confers on another a right or imposes a duty impliedly agrees not to defeat that right or make impossible the performance of that duty by any affirmative acts of his own.

4. Thus, in a land contract under which the purchaser must pay or tender money to the vendor personally at a certain time, the vendor impliedly agrees that he will do no act which will render such payment or tender impossible; and such contractual duty of the vendor continues with reference to a payment or tender which the purchaser must make, in order to prevent a

forfeiture of his rights, under the terms of a judgment of strict foreclosure of the contract.

5. Breach of such contractual duty by wilful evasion of payment or tender gives rise to a right of action for at least nominal damages; and the purchaser may recover such actual damages necessarily resulting from the breach as were reasonably within the contemplation of the parties at the time the respective contract duties were assumed.

6. Whether payment or tender of the sum named in the strict foreclosure judgment to the vendor's attorney of record, or payment into court, would fix the purchaser's right and prevent the forfeiture, is not determined. Even if payment might be so made, damages might still result from the vendor's breach by reason of the purchaser's inability to get a conveyance of the land at the time of such payment.

7. The fact that upon breach by the vendor of his duty to receive payment the purchaser might apply to the court for relief against the forfeiture and to have some other method for making payment prescribed, would not prevent damage resulting from the breach, since such application could not be made until the time for payment had expired and would then involve delay and expense.

8. Whether profits which would have accrued to the purchaser from a resale negotiated by him, and which were lost by reason of the original vendor's breach of his duty to receive payment and make conveyance, would be recoverable, not determined.

TIMLIN and KERWIN, JJ., dissent in part.

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

Appeal from order sustaining a general demurrer to plaintiff's complaint, which alleged that defendant is the owner of certain real estate in Waukesha county; that on February 23, 1906, a judgment was entered of strict foreclosure of a land contract which had previously been given by defendant to plaintiff; that such strict foreclosure was subject to the condition that plaintiff pay to defendant on or before August 23, 1906, certain sums of money aggregating on that date approximately $60,000; that plaintiff prior to August 23d, to wit, in the latter part of the month of July, made various attempts to pay said money to the defendant, repeatedly going to his house with the money and sending him letters which he is alleged to

have received, notifying him of the wish to make payment, and that on August 23d a messenger or agent of the plaintiff found defendant and notified him of plaintiff's desire and readiness to make such payment, whereupon defendant appointed an hour on the following day at his attorney's office at which he would be present and would receive the money; that plaintiff attended at that time with the money and defendant did not appear; and that he has been unable to physically tender the payment to him. The plaintiff alleges that the acts of defendant in evading such tender were wilful and with the intention of preventing plaintiff from saving his rights under the land contract and to impose upon him the forfeiture of such rights; further, that on February 24th plaintiff, in reliance upon said judgment, had granted to one Smith an option for the sale of the property involved for $70,000 on or before August 21, 1906, wherein time was of the essence of the contract, and failure by plaintiff to make conveyance on or before August 21st released said Smith; that on said August 21st plaintiff sold and by warranty deed conveyed said property to said Smith in pursuance of said option for $70,000, subject to the condition that, if plaintiff failed to secure proper releases and conveyances from the defendant or his assigns by August 30th, said deed should be void and plaintiff must repay said $70,000; that by reason of defendant's wilful evasion of plaintiff's tender the latter was unable to comply and was obliged to refund, and to lose the profit of said sale, together with certain other opportunities for sale, whereby he suffered damage in the sum of $12,068.76, and certain other amounts, for which plaintiff demands judgment.

The cause was submitted for the appellant on the brief of *Harper & McMynn,* and for the respondent on that of *J. E. Wildish.*

DODGE, J. Plaintiff assures us in advance that his attempt is to state a cause of action in tort. Examining the complaint

in that aspect then: It is at once obvious that none of the acts alleged against defendant is in and of itself prohibited by any law. At most, it is alleged that he did not stay at his home through several days during which plaintiff desired to make tender, or, inferentially, that he went somewhere else; also that he refrained from going to his attorney's office on a certain day promised. Obviously all such acts were entirely lawful in and of themselves. No, law prohibited him from leaving home nor commanded his attendance at his attorney's office. If he owed any duty in those respects, it was one imposed by his own promise or contract and not by law. The fact that inconvenience or actual pecuniary injury results to another from such lawful acts does not transform them into torts. It is but a case of damage without legal wrong—*damnum absque injuria*. *Whalon v. Blackburn,* 14 Wis. 432.

But the complaint alleges that these acts, lawful in themselves, were done maliciously—that is, with the express purpose of causing plaintiff damage—and therefore liability results. Very little aid is given by either counsel on this essential question whether a lawful act becomes a tort by reason of malice or intent to injure. Upon this question there is a sharp conflict of authority throughout the courts of the country. The principle is asserted by perhaps the majority of those authorities "that malicious motives make a bad case worse, but they cannot make that wrong which in its own essence is lawful." *Dawson v. Kemper,* 32 Weekly Law Bull. 15; *Jenkins v. Fowler,* 24 Pa. St. 308. A copious collection of authorities on both sides will be found in the note to *Letts v. Kessler,* 40 L. R. A. 177. However, that subject was presented to this court in *Metzger v. Hochrein,* 107 Wis. 267, 83 N. W. 308, under the aspect of a "spite fence" impairing plaintiff's enjoyment of his residence property. The conflicting authorities were carefully considered, and from that conflict this court allied itself with those holding that mere malice or motive to injure could not impose liability for a lawful act.

That case has been treated as final authority for that proposition in *Sullivan v. Collins,* 107 Wis. 291, 83 N. W. 310; *Marshfield L. & L. Co. v. John Week L. Co.* 108 Wis. 268, 274, 84 N. W. 434; *Huber v. Merkel,* 117 Wis. 355, 363, 94 N. W. 354. We deem the rule of *Metzger v. Hochrein* now settled in Wisconsin, and that malicious intent to injure cannot transpose a lawful act into a tort, and hence that the complaint fails to state a cause of action *ex delicto.*

2. The conclusion reached in response to plaintiff's own construction of his complaint is, however, not conclusive. A demurrer challenges the sufficiency of the complaint to state any cause of action, and must not be sustained in face of one which does by liberal construction state facts from which any liability results, although not for some or all of the damages sought to be recovered. *Bieri v. Fonger,* 139 Wis. 150, 120 N. W. 862. From the present complaint it clearly appears that defendant was under a contractual duty to the plaintiff none the less because such duty had been declared and defined by the judgment of a court. That contract required defendant to convey to the plaintiff certain land upon payment of certain money within a defined time. It imposed upon the plaintiff a duty to the defendant to make such payment or at least tender to him personally, for the conveyance was to be cotemporaneous, and such cotemporaneousness was doubtless necessary to the raising of the money to be paid. From a contract imposing such duty on the plaintiff there resulted by necessary implication the agreement on defendant's part to do no act which would render such payment or tender impossible. This upon the general principle that he who by mutual contract confers on another a right or imposes a duty impliedly agrees not to defeat that right or make impossible the performance of that duty by any affirmative acts of his own. *Manning v. Galland-Henning P. M. D. Mfg. Co., ante,* p. 199, 124 N. W. 291; *Eliot Nat. Bank v. Beal,* 141 Mass. 566, 569, 6 N. E. 742. By this complaint it is alleged that the acts of

defendant were in fact done for the express purpose of preventing the plaintiff from tendering or paying the money and acquiring his rights, that they were effective to that end, and that damages of various sorts resulted to him. These facts of themselves are sufficient to show a breach of contract and resulting damages, unless indeed it appears by other allegations of the complaint either that damages did not necessarily result from defendant's breach of his contract duty, or that they were not such as were within reasonable contemplation of the parties at the time of making the contract. *Hadley v. Baxendale,* 9 Exch. 341; *Guetzkow v. Andrews,* 92 Wis. 214, 219, 66 N. W. 119; *Lippert v. Saginaw M. Co.* 108 Wis. 512, 84 N. W. 831.

It is contended by respondent that even wilful evasion by defendant of payment or tender could not make the damages alleged unavoidable, for the reason that plaintiff might have tendered directly to the attorney of record in the suit adjudging these contract duties. It does not expressly appear that there was such an attorney accessible to plaintiff; but, apart from that consideration, it might well develop by proof to be offered in support of this complaint that the inability of the attorney to respond to such tender by the delivery of a conveyance rendered that method practically inefficient to protect plaintiff's rights by reason of the necessity of a conveyance of the property cotemporaneously with the payment to enable security for money needing to be borrowed in order to make legal tender. We do not in this connection decide, however, that the general authority of an attorney of record, which is held in some cases to extend to the collection of a debt, and by statute extends to the release of a mere money judgment (sec. 2908, Stats. 1898; *Flanders v. Sherman,* 18 Wis. 575), also extends to the acceptance or refusal of a tender or payment under such a judgment as this. Again, it is suggested, though not argued, that plaintiff might have paid the money into court and fixed his rights. No statute or authority is cited to

support the proposition that one commanded by a judgment to pay money to his adversary can fully satisfy that command by payment to any court officer, sheriff, or clerk, in absence of some further action by the court authorizing such payment or tender upon grounds arising subsequent to the judgment, and we have found none. Further, however, the same considerations might render such a privilege, if it existed, ineffective in avoidance of damages as those we have mentioned in the case of tender to the attorney.

It is also suggested that plaintiff, instead of suffering the loss of his bargain and alleged consequent damage of some $9,000, might have applied to the court to prescribe some means of payment and tender irrespective of defendant's conduct. We have no doubt that when defendant breached his contract a court might, upon a showing of such fact, either on the foot of the existing judgment or in a new suit in equity, have protected plaintiff against the forfeiture, and prescribed some equivalent method for making payment of the purchase price; but the facts upon which to base such an application could not, under the circumstances of this complaint, affirmatively appear until the period for payment expired, and although the complaint alleges that plaintiff had a period of some six or seven days within which the full performance of the judgment on both sides might have saved him from the alleged loss of his bargain, it is a question of fact whether it was then possible to seek and obtain relief from a court so as to avert that loss. In any event, however, the breach of the contract, when completed, gave rise to a right of action for at least nominal damages, and it is apparent that, even if plaintiff might have avoided the larger damages by some court procedure, he could not take that court procedure without expense; so that he must suffer some actual damages in the effort to avoid still more. Of course we do not decide as a matter of law that the lost profits of plaintiff's alleged resale of the land were themselves proper measure of the damages recover-

able upon breach of contract. That question involves doubt-ful rules of law, and its answer might well depend upon facts provable under the complaint significant upon the contempla-tion of the parties at the time of the making of their contract. We, however, deem it clear that the complaint does state a breach of contract by the defendant with a showing of some damages unavoidably suffered by the plaintiff as a result, which may appear by proof to have been within the reasonable contemplation of the parties at the time the respective con-tract duties were assumed.

*By the Court.*—Order sustaining the demurrer is reversed, and cause remanded for further proceedings according to law.

TIMLIN, J. (*dissenting*). The complaint shows that on February 23, 1906, in a suit for strict foreclosure, a decree *nisi* was given and rendered whereby if the plaintiff herein, defendant in the foreclosure suit, paid to the defendant herein and to defendant's wife, plaintiffs in the foreclosure suit, within six months from notice of entry of said decree, $2,000, the plaintiffs in the foreclosure suit should be required to deed a tract of land therein described to this plaintiff, but in case this plaintiff failed to pay said sum within said time he should convey said tract to the defendant herein. This decree with reference to another piece of property "provided further that if the defendant *Dr. Oscar Loehr* pays to the plaintiffs the sum of $56,664.42 in addition to the $2,000 aforesaid within six months from the notice of entry of judgment, together with the costs and disbursements of this action, with interest on above amounts at the rate of five per cent. per annum to the time of payment, then and in that case all the conditions of said land contract shall be deemed fulfilled, but in default of such payments within said time this judgment shall be abso-lute." This foreclosure decree also contained a provision di-vesting *Dr. Loehr* of all right, title, and interest in and to the property affected by the above-quoted paragraphs except as re-

served in these paragraphs.   The complaint in the instant
case then avers that the defendant *Dickson,* during the latter
month or more of this six-months period of redemption, ab-
sented himself from his usual place of abode, concealed him-
self, and kept out of plaintiff's way so that plaintiff, although
able and willing to pay and desirous of paying the amounts
fixed by such decree, was unable to do so or to make tender
thereof, whereby he lost his opportunity for redemption
within the time limited, and also lost a sale of the property
which he might or could have made within that time.   It is
averred that this conduct of *Dickson* was wilful and deliber-
ate and with the purpose and intent and design of preventing
redemption by plaintiff.

The pleader intended to state a cause of action in tort, and
he has stoutly contended before this court that the complaint
states such cause of action.   But the majority of this court
holds that the complaint shows a contract obligation resting
upon *Dickson* and a breach thereof by the latter.   I concur in
the view that the complaint states no cause of action in tort,
for it shows no breach by *Dickson* of any duty imposed upon
him by law.   I think the original contract stipulations which
were the subject of the foreclosure suit are merged in the
decree there given.   No doubt a judgment is for certain pur-
poses considered a contract.   But this is a legal fiction refer-
able to certain remedies thereon or necessary to meet the re-
quirements of statutes or constitutions which might otherwise
include the contract until judgment was entered thereon and
fail to cover it thereafter.   Bishop, Contracts, §§ 141, 566;
1 Black, Judgments, §§ 7-11; 17 Am. & Eng. Ency. of Law
(2d ed.) 763, 764, and cases cited.

If this decree creates, expressly or by implication, a con-
tract obligation of the kind suggested resting upon *Dickson,*
then every decree for specific performance or similar relief
creates such contract obligation and may be the basis of an
action at law.   On the other hand, if we consider the original

contract stipulations to be in force notwithstanding the decree, or if we consider that the decree continues the stipulations in force unmodified, there is no covenant, express or implied, in the original contract that *Dickson* shall be at any particular place or hold himself in readiness to receive this money. It is the duty of the debtor, where no place of payment is fixed, to seek out, find, and pay to his creditor. If a mortgagee leaves the state or changes his place of residence and his whereabouts are unknown to the mortgagor for ten or fifteen years, is he liable at law upon contract for damages if a wrongful or malicious intent be found? In the case at bar I think the only effect of this absence of *Dickson,* whatever his motive, would be to entitle the defendant in the strict foreclosure judgment, upon application to the court, to have the time of payment extended or to pay the money into court. The weakness of the decision I think is that it finds a contract obligation resting upon the defendant where none exists, either expressly or by implication, and finds a breach thereof consisting of lawful and usual acts not by any obligation prohibited.

KERWIN, J. I concur in the foregoing dissenting opinion of Mr. Justice TIMLIN.