**AL J. GOODMAN & CO., Plaintiff-Appellant,**

v.

**BUCYRUS ERIE COMPANY, Defendant-Appellee.**

**No. 71-1586.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1972.

Decided Nov. 21, 1972.

Roland J. Steinle, Jr. and Robert E. Hackett, Jr., Milwaukee, Wis., for plaintiff-appellant.

Lester S. Clemons, Charles Q. Kamps, Milwaukee, Wis., for defendant-appellee.

Before DUFFY, Senior Circuit Judge, KILEY, Circuit Judge, and CAMPBELL, Senior District Judge.[1]

KILEY, Circuit Judge.

This is a diversity suit seeking damages for breach of an alleged oral contract. The district judge, 327 F.Supp. 107, found the evidence insufficient to establish a contract and entered judgment for defendant Bucyrus Erie Company (Bucyrus). Plaintiff Al J. Goodman & Co. (Goodman) has appealed. We affirm.

1. Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

Goodman, at the time of the alleged incidents, was a North Carolina partnership engaged in the business of acting as broker in the purchase and sale of new and used construction equipment. Bucyrus, a Delaware corporation with its principal office in Milwaukee, Wisconsin, was engaged at the time in the manufacture and sale of large earth moving equipment. The alleged oral contract concerns the sale of a used dragline by Mussens Ltd., a Canadian distributor of Bucyrus' products, to Henry J. Kaiser Co. (Canada) Ltd.

In the summer of 1964 Kaiser was preparing to bid on a large construction contract in Canada. Its equipment manager, Racher, telephoned Goodman on September 2, 1964 and asked for information about available equipment to be used in preparation of Kaiser's bid. Goodman wrote Racher about a used Bucyrus dragline and quoted a price of $165,000.

On the following day, Goodman wrote Bucyrus' used equipment coordinator, Hollingsworth, and indicated that "[w]e have today offered the [dragline] . . . listed with us by you for resale to one of our interested customers." Goodman inquired whether the dragline was still available and stated he would "appreciate your cooperation." Goodman also indicated that he would further advise Hollingsworth "if our customer is interested."

On September 9 Racher again called Goodman expressing an interest in the dragline as quoted in Goodman's September 3 letter, and said he would like to inspect it. Immediately thereafter, Goodman made a telephone call to Hollingsworth and indicated Kaiser's interest. In the course of the conversation, Hollingsworth told Goodman that he was the first person to bring Kaiser to his attention and added that the dragline was available and inspection could be made at Madisonville, Kentucky. Hollingsworth also stated that he had an inspection report made by a Bucyrus employee available for Kaiser use. He told Goodman that Bucyrus would not quote Kaiser a figure, but warned that the

"asking price of $135,000" was well known in the trade.

Goodman passed the information from Hollingsworth on to Racher, who thereafter followed Goodman's suggestion of contracting Hollingsworth for additional information. After Racher's telephone call to Hollingsworth, the latter contacted Goodman to inquire as to Racher's address so that the inspection report on the dragline could be sent to him. On September 10 and 11 Racher went to Kentucky with a Mussens representative and inspected the dragline.

After his September 9 telephone conversation with Goodman, Racher, who had no authority to make the purchase, gave the information obtained from Goodman to his superior, Davis, who began dealing in Canada with Mussens. Davis and Mussens had earlier been in touch with respect to equipment, other than the dragline, for the Canadian project. Davis favored Mussens, over Goodman, because of past dealings, Mussens' Canadian location, and accessibility for service.

Subsequent to the September 9 conversation between them, Goodman did not participate in any negotiations with Kaiser but occasionally inquired of Hollingsworth as to the status of negotiations and requested to be advised of any developments. On December 16, 1964 Goodman learned for the first time that Mussens had obtained the dragline from Bucyrus and sold the dragline to Kaiser. Goodman's suit followed.

The issue at trial was whether the September 9 telephone conversation between Goodman and Hollingsworth was sufficient to establish an oral contract giving Goodman an exclusive brokerage in the sale of the dragline The evidence at trial was presented by stipulation, depositions and oral testimony. Although Goodman testified at the trial, the deposition testimony of Hollingsworth, with whom Goodman spoke on September 9, 1964, was read into the record. There is no substantial dispute about what was said by each in their conversation or about other relevant events.

Goodman contends that in consideration of revealing to Bucyrus that Kaiser was his customer interested in buying the dragline, Bucyrus made the following promises: if Kaiser contacted Bucyrus directly or through another, Kaiser would be referred back to Goodman for further negotiations regarding a sale of the dragline; no price would be quoted to Kaiser directly or through another; full cooperation would be given to Goodman in his effort to make the sale; and Goodman would be kept advised as to any developments with respect to the sale.

The alleged breach is said to have occurred as a result of Bucyrus selling the dragline to Kaiser through its Canadian distributor, Mussens, rather than performing in accordance with the above-mentioned promises. Owing to this alleged breach, Goodman sought recovery of $30,000 damages, being the difference between the $165,000 figure quoted by him to Kaiser on September 3, 1964, and the $135,000 figure at which the dragline was sold to Kaiser.

In defense Bucyrus asserted that there was no oral contract made with Goodman on September 9 and that even if there had been Goodman was not entitled to a commission since he was not the procuring cause of the sale.

The district judge found the ultimate facts in accordance with those defenses.[2] He thought that the evidence was "at best . . . an informal arrangement for the mutual exchange of information" with respect to any future contact with either party concerning the sale of the dragline. He found no violation of any alleged contract obligation by Bucyrus in the sale to Kaiser through Mussens.

Since Goodman is challenging the sufficiency of the evidence, the vital issue on appeal is whether the district court could reasonably infer from the relevant evidence that no oral contract arose.

■ Goodman argues that the evidence shows Bucyrus recognized "some

kind of an obligation" because he was the first broker to give Kaiser's name to Hollingsworth, and a Bucyrus official made the statement that "if Goodman was involved somehow" in the sale he ought to receive a "finder's fee" of $5,000. This, however, does not compel a finding that a contract existed. We think that the district judge could well have decided that the essential elements of contract had not been proven by the evidence before him absent a showing that that evidence was customarily considered in the trade to be a binding agreement.

■ Hollingsworth's promise to "cooperate" with Goodman did not compel the district court to find that Bucyrus was committed to a contract obligating it not to sell Kaiser except through Goodman. This is especially true in light of Hollingsworth's uncontradicted testimony that Goodman did not request, and nothing was said about, a commission or a "discount for a dealer," that no statement was made about "Goodman being protected," and no request that Bucyrus not sell the dragline "to anyone else."

Although Goodman did not request an exclusive brokerage during the September 9 telephone conversation, he relies upon what Hollingsworth said as implying exclusiveness. But the idea of an exclusive agency or brokerage is inconsistent with the undisputed fact that "the price of $135,000" was "pretty generally broadcast" with Bucyrus' dealers in the trade. That information left the door open for Goodman's competition to deal with Kaiser, to whom Goodman quoted the figure of $165,000.

The only decision Goodman refers us to in support of his position is Loehr v. Dickson, 141 Wis. 332, 124 N.W. 293 (1910). There defendant was under a contractual duty to convey land to plaintiff within a certain time and plaintiff under the duty to pay for the land or

---

2. Goodman expressly disclaims any error in the determination of the district judge that he was not entitled to a commission as a broker. He had refused to accept a "commission" of $500 from Bucyrus, after the sale to Kaiser.

make tender of payment. The court decided that defendant's contractual duty implied the duty not to render payment or tender impossible. *Id.* at p. 336, 124 N.W. 293. The principle relied upon by the court to find that implied duty presupposed the express contractual duty. The *Loehr* case is distinguished, however, from the case before us where that presupposition was not required on the evidence.

We hold that the district judge was not clearly in error in his findings that the September 9, 1964 conversation did not create an exclusive oral brokerage contract between Goodman and Bucyrus under which Goodman was entitled to recover $30,000 by reason of the sale by Mussens to Kaiser of the Bucyrus dragline. The judgment based on the findings was justified.

Affirmed.