Jack MA, Plaintiff,

v.

The COMMUNITY BANK, Defendant.

No. 73–C–427.

United States District Court,
E. D. Wisconsin.

July 25, 1980.

Jack Ma, pro se.

Robert C. Burrell, Borgelt, Powell, Peterson & Frauen, S. C., Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This action has had a long and tortured history. Commenced in 1973, it was finally brought on for a court trial on July 9, 1979. After a five day trial, the Court ordered post trial briefs from the parties and took the matter under consideration. After the completion of the briefing schedule, the plaintiff dismissed his attorney and moved to substitute his own pro se brief in place of the one submitted by counsel. After due consideration, the Court granted plaintiff's request. Now, after almost a year, this case is ripe for a decision. The following constitutes the Court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

The plaintiff, Jack Ma, is a resident of New Jersey; the defendant, The Community Bank, is a resident of the State of Wisconsin. Pursuant to 28 U.S.C. § 1332, this Court's jurisdiction is properly invoked. Originally, plaintiff asserted seven causes of action against the defendant. The Court, however, granted defendant's motion for summary judgment with respect to four of plaintiff's original causes of action. *See, Jack Ma v. The Community Bank*, No. 73–C–427 (E.D.Wis. 10/21/77). The three remaining issues presented at trial were: (1) whether the defendant breached its contract with the plaintiff; (2) whether the

defendant fraudulently induced the plaintiff to enter into a contract with it; and (3) whether the plaintiff is entitled to interest on the interest checks defendant withheld. These disputes revolve around two incidents that occurred in 1967 and 1971.

On March 31, 1967, Jack Ma, accompanied by Mr. Clarence E. Kriesa, Associate Dean of Admissions at St. Norbert College, went to The Community Bank to open a savings account. Dean Kriesa accompanied Mr. Ma because Ma was a foreign student who had just arrived in the United States. Prior to that time, he had been living in Australia and before that in Viet Nam. Dean Kriesa testified at trial that he took Mr. Ma to The Community Bank because it was the closest bank to campus.

When they arrived at the bank, Dean Kriesa introduced Mr. Ma to the head teller of the bank, Gerald Gerbers. Mr. Ma then proceeded to open a passbook savings account No. 12398, making an initial deposit of $1,278.00. Mr. Gerbers processed the application and observed the plaintiff filling out the signature card.

After opening the passbook account, Mr. Ma told Mr. Gerbers about a particular type of time deposit that he had used in Australia. He asked Mr. Gerbers whether the bank had anything like that because he had a large amount of money that he wanted to keep safely and was worried about leaving it in his room, especially with a roommate he did not know. Mr. Gerbers told him about a savings certificate of deposit (SCD), which he said paid a higher rate of interest and which was very safe because it was non-negotiable. Mr. Ma also asked what would happen if the certificate was stolen. In response, Ma testified, Gerbers told him that if it was lost, all he had to do was to report the loss to the bank and the bank would issue him a new one because they kept a copy of all SCD's it issued. Mr. Gerbers also showed him a form of a certificate and pointed out the word "non-negotiable" on the form. They also discussed the higher rate of interest he would receive and a penalty provision for cashing the certificate in early. After this discussion, Mr. Ma

purchased SCD No. 847 for $4,000.00. Ma made the purchase with an International Bank Draft.

For the next year and one-half, Mr. Ma continued to do business with The Community Bank and, in particular, with Jerry Gerbers. Not only did he continue to make deposits and withdrawals from his savings account, but he also purchased additional SCD's and opened a joint account with his brother, Edward Ma. The additional SCD's, some of which were approved by Mr. Gerbers, all stated that they were non-negotiable and the bank never informed Mr. Ma that their reissuance procedure had changed from the time he purchased his original SCD's.

In September of 1968, the plaintiff moved to California and notified the bank of his change of address. While in California, he purchased, by mail, three other SCD's Nos. 4464, 4465 and 4466, each in the sum of $10,000.00. He also cashed a number of SCD's by mail and regularly received his interest check from the bank.

In September of 1971, the plaintiff moved from California to New York City. On September 28, 1971, the plaintiff's car was broken into and his luggage was stolen. One of the pieces of luggage contained the three SCD's Nos. 4464, 4465 and 4466. Ma reported the theft, but the police records do not list the SCD's as one of the items stolen. The next day, Ma called The Community Bank and asked to speak to Mr. Gerbers. According to Ma, Mr. Gerbers recognized his voice, and Ma told him of the loss of the certificates. He also explained that he had just moved to New York and did not have a permanent address. Furthermore, he requested that the bank withhold his interest check until he notified them of his new address. Gerbers told him that the bank would withhold the checks until he notified them of his new address, and that when he found an apartment he should notify the bank of his loss with a formal letter.

On October 20, 1971, Ma sent a letter to the bank notifying it of the loss and requesting that the interest checks and new SCD, be forwarded to him at his new ad-

dress. After receiving the letter, Gerbers issued an internal memorandum on the lost certificates and informed the bank president. The president then consulted with the bank's attorney, who suggested that the plaintiff be required to furnish an indemnity bond before the bank replaced the SCD's. The attorney apparently was concerned about the negotiability of the SCD's and the identity of Jack Ma.

In response to this suggestion, Ma informed the bank that he could not get a bond because he was a foreign student and that he would be willing to come to Wisconsin if necessary. The bank persisted in its request for a bond and never replied to Ma's offer to come to Wisconsin. Furthermore, the bank delayed in sending a number of the interest checks to him. The bank did, however, find a bonding company that would give Ma a bond, but Ma refused to purchase the bond. In 1976, three years after the suit was filed, and after Mr. Ma's identity had been established at his deposition, the Court ordered the bank to release the principal sum of $30,000.00 to the plaintiff.

The above facts are virtually uncontradicted by the defendant. The defendant's principal witness at the trial, Mr. Gerbers, testified that he could not remember any of the details of the conversation that took place in 1967. Furthermore, he testified he did not remember or recognize the plaintiff but was familiar with the name. In addition, he stated that when he was head cashier he had no idea what would happen if an SCD was lost and did not know the meaning of the term "non-negotiable" at that time.

Other witnesses also testified at trial and none of them contradicted the plaintiff's testimony. Dean Kriesa testified that although he was at the bank on March 31, 1967, and stood close to Mr. Ma and Mr. Gerbers, he did not overhear the conversation between Ma and Gerbers. He does remember, however, something about interest being discussed. The only point of conflict between his testimony and that of Mr. Ma's was the duration of the conversation.

Dean Kriesa remembers that it was about fifteen to twenty minutes and Mr. Ma testified that the conversation took approximately 45 minutes. Considering the amount of paperwork involved in opening both accounts, it is more likely that Ma's recollection is correct. In any event, Dean Kriesa's testimony does not affect Ma's credibility as a witness. The other persons who testified for the plaintiff also substantiated his recitation of the facts, at least to the point that they were all told the same story by Mr. Ma. Furthermore, evidence was introduced as to Mr. Ma's considerable efforts in trying to obtain the assistance of public officials and banking officials to help him get the bank to return his money.

Mr. Gerbers, on the other hand, demonstrated a remarkably poor memory. Although it is understandable that after ten years a person's memory would fade, Mr. Gerbers had absolutely no recollection of the events of March 31, 1967, despite Mr. Ma's oriental appearance, his accented speech, and his use of an International Bank Draft to purchase the SCD. Moreover, on cross-examination, Mr. Gerbers admitted that the bank had very few oriental customers. In fact he could only remember one other oriental customer. The only thing that Mr. Gerbers did remember was that at that time he had no idea what the bank's actual policy was with regard to lost SCD's and, at that time, he did not know what "non-negotiable" meant.

Defense counsel argues that because Mr. Gerbers could not remember the conversation or any of the details of the March 31, 1967, meeting that the Court should infer that nothing unusual was said during the conversation. Accepting this proposition, the Court does not find the plaintiff's testimony is any less credible. Nor does the Court find that it would be unusual for a person to inquire about how an SCD is replaced if lost or stolen. To a person unfamiliar with such a savings device, questions concerning its safety and its ability to be replaced would be normal. Having observed the witnesses and heard all the testimony, the Court finds the plaintiff to be a

credible witness and accepts his version of what happened on March 31, 1967.

### Breach of Contract

 When a person deposits money with a bank in a general account such as a savings account, a creditor/debtor relationship is established. The bank becomes liable on the terms of the expressed or implied contract of deposit. *See Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Huber Glass Co. v. First National Bank*, 29 Wis.2d 106, 108, 138 N.W.2d 157 (1965). If a bank fails to pay according to the terms of the agreement with the depositor, the depositor may sue the bank for a breach of contract. *See* 10 Am.Jur.2d Banks § 449 (1963). A similar relationship is also established when a person buys a certificate of deposit. A certificate of deposit is "a written acknowledgement by a bank or banker of the receipt of a sum of money in deposit which the bank or banker promises to pay to the depositor . . . whereby the relationship of debtor and creditor between the bank and depositor is created." 10 Am.Jur.2d Banks § 455 at 426 (1963).

In this instance, therefore, when Jack Ma tendered his money for the first SCD and for all the future SCD's, including SCD's Nos. 4464, 4465 and 4466, a contract was formed between the bank and Jack Ma. The terms of the contract included the terms on the face of the certificate as well as those orally agreed upon at the time of the making of the contract that were intended to explain and supplement the incomplete terms on the face of the agreement. *See* Wis.Stats. § 402.202.

 Each SCD, on its face, provided that the bank would pay Ma $10,000.00 upon the expiration of the ninety-day term, plus a five percent quarterly interest. In addition, each provided that the SCD was renewable for a period of up to three years. They also bore the word "non-negotiable." The testimony of Ma at trial established that these terms were not intended to be the complete agreement. Rather it is clear that because of Ma's concern about the loss of the certificates, the parties agreed to reissue the certificates immediately upon notification of their loss or theft by Ma. The objective intent of the parties is clearly demonstrated by Ma's statement and by Mr. Gerbers' statement, as well as his actions in pointing out the term "non-negotiable" on the original SCD. That Mr. Gerbers did not know what the term meant and was ignorant of the actual reissuance policy of the bank does not change the objective intent demonstrated by the parties. Therefore, the Court finds the oral agreement made by the parties was intended and did become part of the contract between Ma and the bank. Additionally, the Court finds because there was no further repudiation of the agreement, the agreement was incorporated into each additional SCD purchase by Ma, including the three SCD's at issue here.

Having concluded that there was, in fact, an agreement, the Court must move to the question of whether or not the defendant has breached this agreement. In anticipation of the Court's finding that a contract existed, the defendant has raised three defenses to the breach of contract claim. First, defendant asserts that the statement of Mr. Gerbers to the effect that the bank would immediately reissue a lost SCD is too indefinite to constitute a contract to preclude the bank from seeking a bond of indemnity. In *Al J. Goodman & Co. v. Bucyrus Eries*, 469 F.2d 1274 (7th Cir. 1972), a case relied on by the defendant, the Court found that a conversation between the broker/plaintiff and manufacturer/defendant regarding the sale of a drag line to a third party did not constitute an exclusive brokerage contract. Affirming the district court, the Seventh Circuit Court of Appeals held that the conversation was too indefinite to constitute a contract in the absence of any showing that "the evidence was customarily considered in the trade to be a binding agreement." *Id.* at 1276. The defendant here argues that, like the conversation in *Goodman, supra*, the conversation between Ma and Gerbers was too indefinite and did not preclude the bank from requiring further security in case of loss. Mr.

Gerbers' statement, however, was much more definite than the one in *Goodman.* Mr. Gerbers stated that the bank would immediately replace a lost or stolen certificate and that it was safe because it was non-negotiable. If he intended that there be any other requirement for replacement of a certificate, he was obligated to set them forth. His subjective intent cannot form part of this contract. In addition, in view of his testimony, it is quite unlikely that he intended anything different from what he said. Therefore, the Court finds that as part of the contract between the plaintiff and the bank, the bank orally agreed to replace any lost or stolen certificates immediately upon notification by Mr. Ma of the loss without any further requirements or security.

Defendant also contends that even if a contract existed, it is subject to a condition that the SCD's owner's identity be sufficiently established at the time of the theft and that because of the chain of circumstances, this condition was not met. It is obvious, that, although unspoken, the identity of the owner of the SCD was a condition of the contract. Otherwise, the bank would be contracting to give a new SCD to anyone who reported one lost. Such an interpretation would be completely unreasonable and contrary to Mr. Ma's intentions as well. The contract was to give Jack Ma a new SCD if one of *his* SCD's was lost or stolen. Therefore, his identity was an essential element of the contract.

■ Defendant argues that because Mr. Ma moved from De Pere to California and then to New York, the circumstances changed so significantly that they are entitled to raise the defense of commercial frustration in nonfulfillment of this condition precedent. The defense of commercial frustration is available when an intervening event or change of circumstances occurs which is "so fundamental as to be regarded by the law both as striking at the root of the agreement and as entirely beyond what was contemplated by the parties when they entered into the agreement." 18 S. Williston, *Law of Contracts* § 1954 at 129, (3d

Ed. 1978). The most famous case of commercial frustration involved the letting of seats for a coronation that never took place. *See Krill v. Henry,* 2 K.B. 740 (1903).

■ In Wisconsin, to prove frustration, the defendant must show that:

> After a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made . . . *Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. Chicago & Northwestern Transportation Co.,* 82 Wis.2d 514, 522, 263 N.W.2d 189 (1978), *quoting,* Restatement 2d Contracts, Tenative Draft No. 9 § 258 (1974).

Defendant argues that the principal purpose of the contract between Ma and Gerbers was the reissuance of the SCD to the rightful owner. Defendant contends this purpose was frustrated when the plaintiff moved away making positive identification impossible. Therefore defendant alleges it was not obligated to immediately reissue the lost SCD's.

Contrary to defendant's contention, the Court finds that the doctrine of commercial frustration is inapplicable to the facts of this case. Even assuming that the principal purpose of the contract for the SCD's was as defendant stated, defendant has failed to show that the intervening events—Ma's moving from De Pere to California, then New York—were "events" the non-occurrence of which was a basic assumption upon which the contract was made." *Id.* In fact, because Jack Ma was a student at the local college, the assumption would be that he would not always be a resident of De Pere or a student at the college. Furthermore, the events themselves did not completely frustrate any attempt at positive identification that could have been made by the bank. Although, in New York, Ma's signature could have been checked against the records at the bank as well as his passport. In addition, the bank could have arranged for him to prove his identity at a correspondent bank in New York. Finally, if the bank was only concerned with his identity,

it could have accepted Mr. Ma's offer to come to De Pere. Requiring a bond, however, did nothing to further the bank's concern for identity. It only ensured that if the bank reissued the SCD's it would be insured against further liability. Therefore, defendant has failed to establish the required element for the defense of commercial frustration.

Finally, defendant argues that because of the changed circumstances, that other conditions precedent to the reissuance of the SCD's were not met. In addition to the condition precedent that the owner's identity be established, the defendant argues that other conditions existed which were not met. These alleged conditions were that the agreement to immediately release the SCD's would be effective only if (1) the SCD's were lost in De Pere; (2) the owner resided in De Pere with a known local address; (3) that the owner appeared personally at the bank; and (4) that the SCD's were only for $4,000.00. The Court finds no merit in defendant's argument. There is nothing to suggest from the circumstances that these conditions were either expressly or impliedly made prior to the contract. Such restrictions are simply not the type of conditions that would be implied in a promise to immediately reissue a lost SCD. Again, this is especially true when one considers Mr. Ma's status as a student at the local college. Therefore, the Court finds no basis for defendant's contention that certain conditions precedent existed and were not met.

Because defendant has not established the applicability of any defense and because it is clear that the defendant failed to comply with the terms of the agreement it made with Mr. Ma on March 31, 1967, the Court finds that the defendant breached its contract with the plaintiff in failing to immediately reissue the certificates upon his notification that they were lost. Because the issue of damages remains, the Court cannot completely dispose of this claim.

### Fraud

In plaintiff's fifth cause of action, he alleges that he was fraudulently induced by the defendant to purchase the SCD's in question. The allegedly fraudulent statement relied upon by the plaintiff is Mr. Gerbers' false assurance that the SCD's would be immediately replaced upon notice to the bank of their loss or theft.

In Wisconsin, to prevail on a claim of fraud a plaintiff must establish three elements. First, he must show that there was a false representation. Second, he must show that the false representation was made with the intent to defraud and for the purpose of inducing him to act upon it. Finally, he must show that he relied upon the act or statement to his detriment and loss. *Goerke v. Vojvodich*, 67 Wis.2d 102, 107, 226 N.W.2d 211 (1975). Not only must the plaintiff show the existence of all three elements, he must also prove each element by clear and convincing evidence. *Mack v. Earle M. Jorgensen Co.*, 467 F.2d 1177, 1179 (7th Cir. 1972); *Morgan v. Inter-Continental Trading Corp.*, 232 F.Supp. 444, 450 (E.D.Wis.1964); *Miles v. Mackel Bros. Div. Deltona Corp.*, 73 Wis.2d 84, 89, 242 N.W.2d 247 (1976). A statement is fraudulent if made with knowledge of its falsity or in reckless disregard of its truth or falsity. *Stevenson v. Barwineck*, 8 Wis.2d 557, 99 N.W.2d 690 (1960); *Graff v. Tinkham*, 202 Wis. 141, 231 N.W. 593 (1930). A promise to do something in the future may also serve as the basis of a claim of fraud if the promissor, at the time he made the promise, intends not to comply with the promise. *Morgan v. Inter-Continental Trading Corp.*, 232 F.Supp. at 451; *Alropa Corp. v. Flatley*, 226 Wis. 561, 566, 277 N.W. 108 (1938); *see* Restatement of Torts § 530 (1977).

In this instance, plaintiff contends that the evidence at trial clearly and convincingly demonstrates that the defendant fraudulently induced him to purchase the SCD's. He asserts that it is uncontradicted that Mr. Gerbers made the statement regarding the reissuance of the SCD's and that the statement was made in reckless disregard of the truth, because according to Mr. Gerbers' own testimony, he did not know at that time what procedure the bank used in reis-

suing lost SCD's. Plaintiff also contends that the statement was material to the contract because of his expressed concern for the safety and replaceability of the SCD's. In addition, he alleges that his statement at trial that he would not have purchased the SCD's if he had known a bond would be required demonstrates his reliance on Mr. Gerbers' statement. Finally, because Mr. Gerbers was a banker, he asserts that he was justified in relying on the statement.

The defendant denies that Mr. Gerbers made the statement in issue and denies that there was any fraudulent misrepresentation at the time the statement was made, if it was made. The defendant asserts that this statement is in the nature of a promise to do something in the future and that because there is no showing that there was no intent to fullfill the promise at the time that it was made, there is no intent to defraud. Finally, defendant argues that the plaintiff could not have justifiably relied on the statement, if made.

■ Consistent with this Court's earlier determination regarding the breach of contract, the Court finds that Mr. Gerbers did, in fact, make the statement. In addition, the Court finds that because by his own testimony he did not know what the actual policy was regarding the replacement of SCD's, the statement was made in reckless disregard of the truth or falsity of the statement. Thus, plaintiff has established the first two elements of his fraud claim. Furthermore, the Court finds that the plaintiff justifiably relied on the statement of Mr. Gerbers, therefore, if the plaintiff can show that he incurred a loss from this reliance, he will have proven all elements of the cause of action based on fraud.

### Interest On Interest Checks

Plaintiff's second cause of action alleges that he is entitled to interest on certain interest checks which were allegedly not sent to him in a timely manner. Plaintiff contends he is entitled to interest on the interest checks dated October 9, 1971, April 9, 1972, July 9, 1972, October 9, 1972, January 9, 1973, and April 9, 1973. Plaintiff contends that the bank was notified of all his changes of address and that they should have forwarded his checks to him when due. The Court notes that in 1973, pursuant to an agreement between plaintiff's counsel and the bank's counsel, plaintiff did receive all interest checks in issue. Therefore the remaining question is whether he is entitled to interest on these checks for the period in which the bank held them prior to plaintiff's receipt of the checks in May of 1973.

Defendant argues that plaintiff is not entitled to interest on the interest checks because the bank acted in a reasonable manner in withholding the interest checks after the SCD's had been reported stolen. In addition, the bank argues that the plaintiff failed to adequately notify it of his changes in address and therefore it could not have sent the checks to him. At trial, the bank's attorney testified that he had recommended withholding payment of the interest as well as the principal until the indemnity bond was filed. Furthermore, he testified that in 1972, he and the plaintiff's former counsel had reached an agreement on the withholding of the interest checks until the dispute had been resolved. Finally, defendant claims that the plaintiff never properly informed them of his change of address and, therefore, they were unable to send him checks.

■ Having reviewed the evidence, the Court finds that the bank, on the advice of its counselor, did not remit the interest checks to the plaintiff in a timely fashion because of the loss of the savings certificates. The evidence shows that it was the bank's intention to withhold the checks and the principal on the SCD's until the plaintiff provided an indemnity bond. Because the Court has already held that the requirement of the indemnity bond was a breach of contract, the Court also finds that the plaintiff is entitled to interest on the above-mentioned interest checks.

### Breach Of Good Faith and Ordinary Care

Finally, plaintiff argues that he is entitled to recover on a separate cause of action

for defendant's breach of his duty of good faith and ordinary care. At trial, this Court expressly held that it would not extend the rationale of *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978), to the case at bar. The Court adheres to its prior decision and need not restate its analysis and reasoning here.

 In spite of this ruling, plaintiff urges the Court to interpret the evidence and conform the pleadings to find a breach of defendant's duty under Wisconsin Statutes § 401.203 which imposes an obligation of good faith in the performance of oral contracts. While a cause of action for a breach of good faith may arise, this Court need not find such a cause of action here, because the facts do not support the allegations of bad faith. Although the bank breached its contract with the plaintiff, the Court does not find that it was acting in bad faith. Furthermore, while the procedures employed by the bank are somewhat lax and the actions of Mr. Gerbers somewhat puzzling, the Court does not find that these actions amount to bad faith on the part of the bank or Mr. Gerbers. Nor does the Court find that the bank failed to exercise ordinary care in the handling of that matters before it. Therefore, the Court need not interpret the evidence and conform the pleadings to the plaintiff's requested cause of action for breach of bad faith.

At the close of the trial of this case, the parties had agreed to try and work out a solution to the damages portion of the case and notify the Court. Apparently the parties were unable to reach a solution and, therefore, it appears a further hearing will be necessary. To facilitate the resolution of this case, the Court will conduct a telephone conference call at *9:00 A.M.* on *Wednesday, August 13, 1980*. This conference is to be initiated by the defendant's counsel, and plaintiff is ordered to forthwith advise the Court and the defendant of his current telephone number. Plaintiff is further instructed that, since he is acting *pro se*, he must be available at that number at 9:00 A.M. on Wednesday, August 13, 1980.

There remains one final collateral issue to be resolved before moving to the damages portion of this case. Local counsel, Jan E. Kearney, has requested permission to withdraw from this case. Ms. Kearney desires to withdraw because she was retained by plaintiff's former New York counsel and because she has had great difficulty in contacting the plaintiff. Neither plaintiff nor defendant have any objections to her withdrawal. Defense counsel, however, requests that another counsel be appointed because of the difficulty in contacting the plaintiff. Because of the unique situation and the lack of objection on the part of all concerned, the Court hereby grants Ms. Kearney permission to withdraw as counsel for the plaintiff. The Court declines, however, to order the plaintiff to retain other counsel.

SO ORDERED.